PABLO G. RIVERA RENTAS, NILDA MARÍA RODRÍGUEZ, querellantes recurridos y peticionarios, *v.* A & C DEVELOPMENT CORPORATION, RAMÓN ACOSTA, querellados recurrentes y recurridos; DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR, agencia recurrida.

*Número:* CE-94-853 *Resuelto:* 26 de noviembre de 1997

452

*José Nicolás Medina Fuentes*, abogado de los peticionarios; *Ciro A. Betancourt*, abogado de los recurridos A & C Development Corp. y Ramón Acosta.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Los esposos Rivera-Rodríguez nos solicitan que revisemos la sentencia emitida por el antiguo Tribunal Superior, Sala de San Juan (Hon. Ángel G. Hermida, Juez), mediante la cual dicho foro desestimó la acción por vicios de construcción instada por ellos contra A & C Development Corp. El tribunal recurrido entendió que los promoventes de la acción no habían descargado adecuadamente el peso de la prueba, al no demostrar de forma independiente y mediante evidencia sustancial que la ruina de su vivienda se debió a un vicio de construcción, conforme les requería el estado de derecho vigente. Al así decidir, revocó la resolución del Departamento de Asuntos del Consumidor (en adelante D.A.Co.) en la cual esta agencia había determinado que la residencia de los esposos Rivera-Rodríguez se encontraba en un estado de ruina funcional atribuible a la constructora y, conforme a ello, había ordenado, a su vez, a ésta reparar la vivienda o, en su defecto, pagar una indemnización de cinco mil dólares ($5,000).

Por entender que el matrimonio querellante demostró debidamente ante la agencia administrativa, mediante prueba pericial no rebatida, tanto el estado ruinoso de su residencia como que éste fue causado por vicios en la construcción, revocamos la sentencia del tribunal de instancia y condenamos a la constructora a resarcir a los esposos recurrentes.

# I

En julio de 1986 los esposos Pablo G. Rivera Rentas y Nilda María Rodríguez adquirieron de la corporación A & C Development (en adelante la constructora) una residencia en la urbanización Miraflores en Bayamón. A cambio pagaron el precio de sesenta y siete mil dólares ($67,000). Meses más tarde, el enlucido (estucado o empañetado) del techo de la residencia adquirida comenzó a desprenderse.

Mediante una carta certificada, que fue enviada en febrero de 1987, Rivera Rentas le informó formalmente al Presidente de la constructora, Ing. Ramón, Acosta, de éste y otros defectos encontrados hasta ese momento en la residencia. En ésta le comunicó que el empañetado necesitaba ser removido en su totalidad dado que se notaban otros embolsamientos que se desprenderían posteriormente.

Al no recibir una contestación, Rivera Rentas formuló una querella por vicios de construcción ante el D.A.Co. el 8 de abril de 1987 contra la corporación constructora y vendedora al amparo de la Ley de la Oficina del Oficial de Construcción adscrita a la Administración de Renovación Urbana y Vivienda (en adelante Ley del Oficial de Construcción), Ley Núm. 130 de 13 de junio de 1967, según enmendada, 17 L.P.R.A. sec. 501 *et seq.* Oportunamente, el D.A.Co. citó a las partes a una vista administrativa. El día de la vista, las partes llegaron a un acuerdo de transacción en el cual la constructora se comprometió a reparar el enlucido desprendido. Este acuerdo fue aprobado por el Oficial Examinador del D.A.Co. en marzo de 1988. En lo subsiguiente, la constructora corrigió parcialmente el enlucido.

Con posterioridad, sin embargo, ocurrieron nuevos desprendimientos del enlucido del techo,[1] además del que se había reparado anteriormente. Ante esta situación, la familia Rivera-Rodríguez se vio obligada a desocupar la segunda planta de la residencia y, más adelante, su totalidad.[2]

Los esposos Rivera-Rodríguez, mediante su representación legal, le comunicaron por escrito al ingeniero Acosta la existencia de los vicios y le reclamaron el pago de ocho mil ciento sesenta y dos dólares ($8,162), costo estimado de la remoción del enlucido restante y del empañetado y la pintura del techo, además de veintitrés mil cuatrocientos cincuenta dólares ($23,450) en concepto de los daños y perjuicios sufridos. Le informaron, además, que de cumplir con dicho pago evitaría el presente pleito. En una comunicación suscrita por su representación legal, el ingeniero Acosta negó ser responsable de los vicios.

En noviembre de 1989 los referidos esposos presentaron ante el D.A.Co. una moción de reapertura del caso fundada en incumplimiento de contrato, por haberse realizado una reparación defectuosa, y en la acción decenal del Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124. En ella alegaron que los desprendimientos ponían en grave riesgo la seguridad y salud de la familia, y reclamaron el pago de una indemnización ascendente a treinta y cuatro mil ochocientos doce dólares ($34,812).[3]

---

[1] Estos desprendimientos ocurrieron en abril, mayo, junio y julio de 1988, así como en mayo de 1989 y febrero y octubre de 1990.

[2] Aunque la residencia de los esposos Rivera-Rodríguez originalmente constaba de una primera planta abierta y una segunda planta utilizada como vivienda, ellos cerraron la primera planta añadiendo paredes y ventanas.

[3] La indemnización se subdivide en: nueve mil doscientos dólares ($9,200) en concepto de los cánones de arrendamiento dejados de percibir hasta ese momento; diez mil dólares ($10,000) por los sufrimientos y angustias mentales causados por los graves inconvenientes de mudanzas, malos ratos y sinsabores; ocho mil seiscientos doce dólares ($8,612) costo estimado de los materiales y la mano de obra que requiere la remoción total del empañetado y la aplicación de productos óptimos, nuevo empañetado y pintura; tres mil dólares ($3,000) por los inconvenientes que causará todo el proceso de remoción; tres mil dólares ($3,000) por honorarios de abogado, y mil dólares ($1,000) por los gastos de peritos y costos del proceso.

Luego de realizadas varias inspecciones de la residencia en cuestión, se celebró una vista administrativa.([4]) En ella declararon ambos esposos y el Jefe de la Sección de Construcción del D.A.Co., Sr. José A. Orta Carmona.([5]) Se presentaron en evidencia los informes de inspección y fotografías de los defectos alegados.

Finalmente, el D.A.Co. dictó una resolución en la que determinó que la residencia, que era objeto de la querella, se encontraba en estado de ruina funcional debido a que el enlucido del plafón se había desprendido o estaba en proceso de desprenderse en aproximadamente el ochenta y cinco (85) por ciento del techo. Ordenó a la constructora reparar el enlucido, removiendo el existente y aplicando una nueva capa, en el término de veinte (20) días. Transcurrido dicho término sin que se reparase el techo, la constructora debía pagar al matrimonio querellante el costo de dicha reparación, el cual valoró en cinco mil dólares ($5,000). Estimó dicha agencia, sin embargo, que los daños y perjuicios reclamados no procedían por entender que los sufrimientos y las angustias mentales eran del todo mitigables y que los esposos bien pudieron, ante la inacción de la constructora, proceder a remover el enlucido del techo y aplicar una nueva capa.([6])

Tras solicitar, sin éxito, la reconsideración de dicha determinación, la constructora acudió al foro judicial mediante un recurso de revisión. El antiguo Tribunal Supe-

---

([4]) Una de las inspecciones fue efectuada por el técnico inspector, el Ing. Félix Rivera Llanos, quien también la había inspeccionado el 24 de abril de 1987, tras presentarse la primera querella. Las otras dos (2) inspecciones fueron realizadas el 21 de marzo de 1990 y el 11 de marzo de 1991 por el Jefe de la Sección de Construcción, Sr. José A. Orta Cardona, quien rindió los informes pertinentes el 21 de mayo de 1990 y el 15 de marzo de 1991.

Luego de varias posposiciones, el Departamento de Asuntos del Consumidor (D.A.Co.) celebró finalmente la vista administrativa el 22 de octubre de 1991.

([5]) Sus credenciales como perito no fueron impugnadas por la otra parte, la cual tampoco efectuó un contrainterrogatorio, ni impugnó su testimonio.

([6]) El D.A.Co. tomó en consideración el hecho de que el matrimonio querellante había invertido diez mil dólares ($10,000) en habilitar la planta baja para vivienda, en lugar de reparar el techo, reparación que, según el propio estimado de los querellantes, resultaba más barata.

rior, Sala de San Juan, acogió el recurso y concedió término a los esposos Rivera-Rodríguez y al D.A.Co. para expresarse sobre sus méritos. Luego de evaluar las respectivas posiciones y de varios incidentes procesales, emitió una sentencia en la cual revocó la resolución del D.A.Co. y ordenó la desestimación y el archivo de la querella presentada.

Dicho foro fundamentó su determinación en que, a tenor con nuestros pronunciamientos en *Interstate Gen. Corp. v. Soto*, 113 D.P.R. 298 (1982), la evidencia presentada durante el proceso administrativo fue insuficiente para sostener la decisión contra la constructora pues, aunque se probó la ruina funcional, no se probó de forma independiente y mediante evidencia sustancial que ésta fuese atribuible a un vicio de construcción o de diseño. Estimó que en la vista administrativa los esposos Rivera-Rodríguez se limitaron a probar la ruina funcional de la residencia, descansando en la doctrina de la presunción *iuris tantum* de causa, establecida en *Géigel v. Mariani*, 85 D.P.R. 46 (1962), que atribuye dicha ruina a un vicio de construcción o diseño.

Interpretó el tribunal a quo que *Interstate Gen. Corp. v. Soto*, supra, revocaba *sub silentio* a *Géigel v. Mariani*, supra. A su juicio, a partir de *Interstate Gen. Corp. v. Soto*, supra, quien reclame al amparo del Art. 1483 del Código Civil, *supra*, luego de haber vencido el plazo reglamentario establecido por el D.A.Co. en el Reglamento Núm. 2268 para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico de 17 de agosto de 1977, Departamento de Asuntos del Consumidor (en adelante Reglamento del Negocio de la Construcción) deberá probar que: (*a*) la obra está en estado ruinoso; (*b*) dicho estado ruinoso es de tal gravedad que su aparición para el tiempo en que se revela excede la medida de lo permisible técnicamente, y (*c*) la ruina o defecto se debe a un vicio de construcción o diseño.

Sentencia de 31 de marzo de 1993, págs. 4–5. Además, entendió que a tenor con lo resuelto en *Interstate Gen. Corp. v. Soto, supra*, la determinación sobre los anteriores extremos debía fundarse en prueba sustancial. Sentencia de 31 de marzo de 1993, pág. 4.

Luego de solicitar la reconsideración de dicho dictamen y de serles ésta denegada, los esposos Rivera-Rodríguez recurren ante nos mediante petición de *certiorari*. Imputan al tribunal de instancia la comisión de tres (3) errores. En el primero, en síntesis, aducen que dicho tribunal erró al concluir que no cumplieron con el peso de la prueba para establecer su causa de acción al amparo del Art. 1483 del Código Civil, *supra*. En segundo término alegan que erró dicho foro al concluir que no tenían derecho a los remedios de cumplimiento específico o resolución del contrato de transacción ante su incumplimiento por parte del contratista. Por último, señalan que erró al no confirmar la resolución del D.A.Co., e imponer honorarios de abogado al contratista ante su manifiesta temeridad.

De entrada debemos señalar que la consideración del segundo error señalado es improcedente en derecho en esta etapa procesal. Los esposos Rivera-Rodríguez no pueden cuestionar la procedencia de la acción fundada en incumplimiento del contrato de transacción si ello no fue objeto de un recurso de revisión ante el tribunal de instancia. En vista de que no solicitaron determinaciones de hecho y conclusiones de derecho adicionales ni reconsideración ante el D.A.Co., así como tampoco la revisión judicial de la resolución del D.A.Co. con respecto a la segunda causa de acción en que se fundaba la moción de reapertura del caso, sobre incumplimiento de contrato por reparación defectuosa, dicha alegación quedó renunciada.[7]

---

[7] Además, conviene aclarar que tal cual está esbozado el segundo señalamiento es erróneo, pues de la sentencia recurrida ni de los autos se desprende que el tribunal de instancia hubiera concluido que los esposos querellantes no tenían derecho al cumplimiento específico o a la resolución del contrato de transacción. Como cuestión de hecho, dicho planteamiento nunca se le hizo al tribunal de instancia.

 Por el mismo fundamento no procede que consideremos el tercer error planteado, que está relacionado a los honorarios de abogado.[8] Además, no encontramos que la actuación de la constructora haya sido manifiestamente temeraria. Entendemos que en esta situación existía una honesta discrepancia en cuanto a cuál era el derecho aplicable a los hechos del caso, pues éste no surgía con claridad de la jurisprudencia de este Tribunal.[9] Véase *Santaella Negrón v. Licari*, 83 D.P.R. 887 (1961).

Determinada la improcedencia de dos (2) de los errores señalados, nos resta evaluar el primer error aducido por los esposos Rivera-Rodríguez. Antes de atender dicho error, sin embargo, debemos considerar brevemente el ámbito de la revisión judicial de las determinaciones de agencias administrativas, como lo es el D.A.Co.

## II

 Como es sabido, una parte que ha sido afectada adversamente por una decisión administrativa final podrá acudir al foro judicial para solicitar la revisión de esa decisión, una vez agota los remedios administrativos que el propio organismo provea para cuestionarla. La revisión judicial suele circunscribirse a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho efectuadas por la agencia están sostenidas por evidencia sustancial en el expediente administra-

---

[8] En este caso, la agencia administrativa no concedió los honorarios de abogado. Como sabemos, la determinación de imponer o no honorarios de abogado a la parte perdidosa descansa en la sana discreción de la agencia. *Bonilla Medina v. P.N.P.*, 140 D.P.R. 294 (1996); *Raoca Plumbing v. Trans World*, 114 D.P.R. 464 (1983). Dicha determinación del D.A.Co., en el caso de marras, no fue objeto de reconsideración ni fue recurrida ante el tribunal de instancia. De los autos no se desprende que los esposos Rivera-Rodríguez solicitaran al tribunal de instancia la imposición de honorarios de abogado por temeridad, ni siquiera en su moción de reconsideración.

[9] De hecho, el tribunal de instancia expresó su insatisfacción con la norma que a su juicio imperaba, la cual lo obligaba a resolver en contra del matrimonio querellante. Véase Sentencia, pág. 5.

tivo visto en su totalidad, y (3) si las conclusiones de derecho fueron correctas. Véanse: Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2175; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993); *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194 (1987); *Rubin Ramírez v. Trías Monge*, 111 D.P.R. 481 (1981); D. Fernández Quiñones, *Derecho Administrativo*, Colombia, Ed. Forum, 1993, pág. 521.

De forma consecuente con el criterio de revisión administrativa dispuesto por el Art. 17 de la Ley Orgánica del Departamento de Asuntos del Consumidor (la Ley Orgánica del D.A.Co.), Ley Núm. 5 de 23 de abril de 1973, según enmendada, se dispone que "[e]l tribunal revisará las resoluciones u órdenes del Secretario con base al récord administrativo sometídole y sólo en cuanto a las conclusiones de derecho; las determinaciones de hecho del Secretario serán concluyentes para el tribunal si estuvieren sostenidas por evidencia sustancial". 3 L.P.R.A. sec. 341p(e).

De ordinario, los tribunales miramos con deferencia tanto las determinaciones fácticas como las interpretaciones de la ley, cuya administración le fue encomendada por la Legislatura, que hayan sido efectuadas por las agencias administrativas. En este último caso se presume que la agencia posee un conocimiento especializado en los asuntos encomendados por el Legislador, por lo que nuestra función revisora se limita a determinar si la interpretación o actuación administrativa fue razonable a la luz de las pautas trazadas por el Legislador. *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, 132 D.P.R. 543 (1993). Las cuestiones de derecho que no involucren interpretaciones efectuadas dentro de la zona de especialización de la agencia son revisables en toda su extensión.

Sin embargo, cuando nos encontramos ante cuestiones mixtas de hecho y de derecho, existe consenso en la doctrina en que se considerará que estamos ante cuestiones de derecho igualmente revisables en toda su extensión.

Véase Fernández Quiñones, *op. cit.*, págs. 548–550. Al respecto, el profesor Fernández expresa lo siguiente en ·su obra:

> Es de notar que las determinaciones duales o mixtas están matizadas por dos determinaciones administrativas. Es necesario en primera instancia, determinar los hechos a tono con la prueba presentada. Luego hay que hacer *la determinación relativa a la disposición legal o disposiciones legales aplicables y* proceder entonces a *aplicar esas disposiciones legales a los hechos.* Los últimos dos procesos *exigen que se determine y analice el derecho aplicable. En esa tarea la autoridad final es el tribunal.* Para que la concepción interpretativa de la agencia pueda prevalecer y recibir un trato deferencial es imprescindible que se reúnan los requisitos de consistencia y razonabilidad con el propósito legislativo .... El tribunal en revisión examina sobre todas las cosas si la agencia administrativa ha cumplido con su misión y deber de interpretar el estatuto de acuerdo con la política pública .... (Énfasis suplido y escolios omitidos.) Fernández Quiñones, *op. cit.*, págs. 549–550.

Examinadas las limitaciones estatutarias y prudenciales que, de ordinario, guían la revisión judicial de las determinaciones administrativas, pasemos a evaluar propiamente el primer error aducido por el matrimonio recurrente.

### III

Los esposos Rivera-Rodríguez señalan que el tribunal de instancia erró al concluir que éstos no probaron su causa de acción al amparo del citado Art. 1483, al no demostrar mediante prueba pericial suficiente que la ruina de su vivienda fue causada por vicios de construcción.

La constructora, por su parte, insiste ante nos en que los hechos de este caso no configuran la ruina funcional que activa la aplicación de la garantía decenal, dispuesta en el Art. 1483 del Código Civil, *supra*. A su juicio, los desprendimientos del enlucido del techo, cualquiera que sea su magnitud, son susceptibles de corregirse rápida y

económicamente. Alude, además, al Reglamento del Negocio de la Construcción para argumentar que la acción para reclamar por estos vicios está caduca, puesto que al momento de presentarse la moción de reapertura del caso habían transcurrido más de dos (2) años de otorgada la escritura de compraventa.

El examen de este primer error nos lleva a auscultar los requisitos evidenciarios necesarios para probar una causa de acción al amparo del Art. 1483 del Código Civil, *supra*, sobre vicios de construcción.

A. El Art. 1483 del Código Civil, *supra*, establece la responsabilidad del contratista por vicios de construcción al disponer, en lo pertinente:

> El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de los diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

Además de esta disposición del Código Civil, en nuestro ordenamiento existen otras leyes especiales que rigen el negocio de la construcción. En particular, la Ley del Oficial de Construcción, la Ley Orgánica del D.A.Co., y la Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341 *et seq.*), concedieron al D.A.Co. el poder y la facultad para regular el negocio de la construcción de viviendas privadas en Puerto Rico.[10] De esta forma se proveyó una mayor pro-

---

[10] Originalmente, la entidad encargada de proteger los derechos de los compradores de vivienda era la Oficina del Oficial de Construcción, creada en 1967 por la Ley Núm. 130 de 13 de junio de 1967, según enmendada, 17 L.P.R.A. sec. 501 *et seq.* Las funciones, los poderes y los deberes de esta oficina fueron transferidos en 1968 a la Administración de Servicios al Consumidor y, posteriormente, al D.A.Co. Véanse: Art. 2 de la Ley Núm. 148 de 27 de junio de 1968 (23 L.P.R.A. sec. 1002), y Art. 5 de la Ley Núm. 5, *supra*, 3 L.P.R.A. sec. 341d.

Con el propósito de garantizar al consumidor la debida atención a sus problemas, la ley habilitadora del D.A.Co. establece entre los poderes otorgados a esta agencia:

"Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de

tección a los compradores de viviendas garantizándoles la debida atención a sus problemas y facilitándoles el proceso de adjudicación de sus querellas.

■ La Ley del Oficial de Construcción, además, enumera una serie de situaciones que según el estatuto constituyen "prácticas indeseables en el negocio de la construcción de viviendas". Entre éstas, incluye dejar de corregir cualquiera de los defectos de construcción, según sean éstos definidos por el reglamento. Art. 9 de la Ley Núm. 130, *supra*, 17 L.P.R.A. sec. 509(e).

En virtud de los poderes delegados al D.A.Co., esta agencia aprobó el 17 de agosto de 1977 el Reglamento del Negocio de la Construcción y, en conformidad con lo antes dicho, incluyó en él una serie de circunstancias que serán concebidas como "defectos de construcción".[11] Sec. 10(j) del Reglamento del Negocio de la Construcción, pág. 15. A su vez, estableció diversos términos en que deberán notificarse éstos al constructor o urbanizador.

■ En particular, la Sec. 10(j)(12) del Reglamento del Negocio de la Construcción, pág. 21, establece que desprendimientos de material del techo constituirán defectos de construcción que deberá corregir el constructor o urbanizador, una vez éste es notificado en o antes del período de dos (2) años a partir de la fecha cuando se otorgó la escritura de compraventa original.

De esta forma los consumidores de viviendas privadas quedaron protegidos contra defectos en la construcción que por su naturaleza no serían enmarcables dentro del al-

_____

adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho, disponiéndose que las facultades concedidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones." Art. 6(d) de la Ley Núm. 5, *supra*, 3 L.P.R.A. sec. 341e(d).

[11] Además, esta sección concede discreción al Secretario del D.A.Co. para determinar, a base de los principios técnicos de ingeniería, el tipo, la clase y el método de construcción, que cualquiera otra anormalidad constituye también defecto de construcción.

cance del Art. 1483 del Código Civil, *supra*, si no causaban la ruina de la edificación. Al amparo de dicho reglamento sólo tendrían que demostrar la existencia del defecto y que notificaron éste de forma oportuna al constructor o urbanizador para que se le impusiera a éste la obligación de reparar el defecto. El constructor estaría obligado, al así hacerlo, a restituir a la vivienda las cualidades de una buena construcción.

■ El hecho de que cierto defecto conste entre los enumerados en la Sec. 10(j) del Reglamento del Negocio de la Construcción, *supra*, no excluye que éste pueda catalogarse como un defecto causante de la ruina de una edificación y que, por lo tanto, aplique el plazo de garantía de diez (10) años estipulado en el Art. 1483 del Código Civil, *supra*, de cumplirse con sus requisitos probatorios. Ciertamente la Ley del Oficial de Construcción nos aclara la interrelación entre el texto del Art. 1483 del Código Civil, *supra*, y las disposiciones pertinentes del Reglamento del D.A.Co., al disponer en su Art. 11, en lo pertinente, que: "Las acciones para exigir responsabilidad por los vicios o defectos de construcción excepto aquéllas que cualifican bajo [el Art. 1483 del Código Civil] caducan por el transcurso de dos años a partir del otorgamiento de las escrituras de compraventa." 17 L.P.R.A. sec. 511.

■ Para poder exigir responsabilidad al contratista, al amparo del Art. 1483 del Código Civil, *supra*, es necesario que la edificación se arruine por vicios de la construcción dentro de los diez (10) años de haber sido construida. De una lectura al precitado primer párrafo del Art. 1483, *supra*, así como de las interpretaciones jurisprudenciales y de la doctrina, no hay duda en cuanto a que el promovente de la acción debe probar, en primer término, el estado ruinoso de la edificación para que proceda su aplicación. Es sabido que la garantía decenal alcanza únicamente a aquellos defectos de particular significación, a aquellos vicios e imperfecciones que causen la ruina del edificio; ya sea la

ruina total, la ruina parcial, la amenaza de ruina o la ruina funcional, distintas etapas éstas jurisprudencialmente reconocidas como ruina. Véase *Maldonado Pérez v. Las Vegas Dev.*, 111 D.P.R. 573, 574–575 (1981).

En la situación particular de la ruina funcional no es necesario que se comprometa la solidez o estabilidad del edificio. Resulta imperiosa, sin embargo, la existencia de graves defectos o vicios. Para hacer esta determinación hemos considerado si los defectos o vicios afectan seriamente la utilización y el disfrute de la edificación, *Maldonado Pérez v. Las Vegas Dev.*, supra, pág. 574, si exceden de la medida de las imperfecciones que cabe esperar en una construcción, *Fantauzzi v. Pleasant Homes, Inc.*, 113 D.P.R. 132, 135 (1982); *Pereira v. I.B.E.C.*, 95 D.P.R. 28, 86 (1967) (en reconsideración); *Géigel v. Mariani*, supra, pág. 50 (adoptando la interpretación de J. Colin y H. Capitant, *Curso Elemental de Derecho Civil*, Madrid, Ed. Reus, 1925, T. 4, pág. 349, si tornan la obra en impropia para su uso); *Fantauzzi v. Pleasant Homes, Inc.*, supra, pág. 135; *Maldonado Pérez v. Las Vegas Dev.*, supra, pág. 575, o si causan un perjuicio considerable, *Fantauzzi v. Pleasant Homes, Inc.*, supra, pág. 135.

Asimismo, para evaluar la naturaleza de los defectos o vicios y así precisar si están comprendidos dentro del término "ruina" al que alude el Art. 1483 del Código Civil, *supra*, deben examinarse, caso a caso: la gravedad del defecto, las circunstancias en que éste se produce y el tiempo de su aparición. *Interstate Gen. Corp. v. Soto*, supra, pág. 300.

En *Interstate Gen. Corp. v. Soto*, supra, pág. 303, resolvimos que unas filtraciones, ocurridas siete (7) años después de la entrega de la residencia por la constructora, "en [dicho] caso tan particular" no constituían la ruina que hace aplicable el Art. 1483 del Código Civil, *supra*. Poco tiempo antes de resolver *Interstate Gen. Corp. v. Soto*, supra, habíamos expresado en *Fantauzzi v. Pleasant Homes,*

*Inc.*, supra, pág. 135, que ciertas imperfecciones, por más graves que fueran, no constituirían los defectos o vicios protegidos por el plazo decenal si afectaban elementos del edificio cuya duración se presumía fuera menor de diez (10) años.[12]

En la determinación de estos elementos hemos utilizado como referencia el Reglamento del Negocio de la Construcción, antes mencionado y aludido en el caso de marras por la constructora. De hecho, en *Interstate Gen. Corp. v. Soto*, supra, manifestamos que, en la apreciación de la gravedad del defecto, dicho reglamento resultaba una valiosa guía.[13] *Interstate Gen. Corp. v. Soto*, supra, pág. 300, citando a *Maldonado Pérez v. Las Vegas Dev.*, supra, págs. 578–579.

Aclarado el primer elemento que debe demostrar un reclamante al amparo del Art. 1483 del Código Civil, *supra*, y los factores que deben ser considerados en esa evaluación, veamos si en el caso ante nos ello se probó.

B. En el caso de marras, la conclusión del D.A.Co. respecto a que en este caso se configuró la ruina funcional que hace aplicable el Art. 1483 del Código Civil, *supra*, constituye una determinación mixta de hecho y de derecho. Como vimos, este tipo de determinaciones se trata como conclusiones de derecho revisables por el foro judicial en todos sus aspectos.

Al revisar la resolución del D.A.Co., el foro de instancia confirmó dicha conclusión. Adujo que el proceso de des-

---

[12] Al respecto véase, además, *Maldonado Pérez v. Las Vegas Dev.*, 111 D.P.R. 573, 576–579 (1981), en el cual resolvimos que unas grietas surgidas en el piso a los casi diez (10) años de construida la vivienda no quedaban comprendidas dentro del concepto "ruina" encarnado en el Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124, pues el defecto no revestía la gravedad necesaria, además, de que el tiempo de su aparición fue tardío.

[13] Como expusimos antes, dicho reglamento, en su Sec. 10 inciso (j), enumera una serie de defectos de construcción y especifica el término en que deberá notificarse al contratista para su reparación. El contratista o urbanizador habrá prestado, en la mayoría de los casos, una fianza para garantizar los gastos de reparación y corrección de dichos defectos, la cual se mantendrá vigente durante dos (2) años a partir de la fecha del otorgamiento de la escritura de compraventa del comprador original de la vivienda. Véase 17 L.P.R.A. sec. 508.

prendimiento del enlucido del techo había afectado el ochenta y cinco (85) por ciento de la vivienda y que ese proceso de desprendimiento amenazaba continuamente a las personas que residían en ella.

Sin duda, los desprendimientos del enlucido del techo en el caso ante nos cumplen con los diversos criterios seña-lados por la doctrina para describir lo que constituye "rui-na funcional": son defectos graves que afectan seriamente la utilización y el disfrute de la estructura, tornan la obra impropia para su uso y exceden la medida de las imperfec-ciones que cabe esperar en una construcción tomando en consideración el tiempo de su aparición. *Fantauzzi v. Plea-sant Homes, Inc.*, supra; *Maldonado Pérez v. Las Vegas Dev.*, supra; *Federal Ins. Co. v. Dresser Ind., Inc.*, 111 D.P.R. 96 (1981).

En la vivienda de la familia Rivera-Rodríguez el mate-rial del techo comenzó a desprenderse a menos de un (1) año de adquirida la vivienda. Los desprendimientos eran susceptibles de ser corregidos a tiempo. De hecho, la cons-tructora accedió a repararlos, mas no lo hizo adecua-damente. Con posterioridad a la reparación no sólo ocurrie-ron nuevos desprendimientos sino que se cayó lo que se había arreglado previamente. Todo ello obligó a la familia de los querellantes a abandonar eventualmente la vivienda. Todas estas fueron determinaciones hechas por el D.A.Co. luego de escuchar toda la prueba desfilada en la vista.

Ante el cuadro de hechos probados ante el D.A.Co. y el estado de derecho vigente, concluimos que los desprendi-mientos del empañetado del techo amenazaban la seguri-dad de los esposos, sus hijos y nietos, quienes residían en la vivienda, y afectaron, además, su utilización y disfrute. Ciertamente, de ordinario no cabe esperar este tipo de de-fectos en una casa a menos de un (1) año de su entrega, cuando comenzaron a ocurrir los desprendimientos. Con-trario a lo argumentado por la constructora, no erraron ni

el D.A.Co. ni el tribunal de instancia al concluir que se daba aquí la ruina funcional. Confirmamos dicha determinación por entender que ésta es correcta en derecho.

 Una vez concluido que la vivienda en cuestión se encontraba en estado de ruina funcional, es claro que se activa la aplicación del citado Art. 1483 y que, por ende, aplica el plazo de garantía de diez (10) años. De aquí que la alegación de que la acción está caduca, por haber transcurrido el período reglamentario de dos (2) años, es inmeritoria.[14]

## IV

Examinemos ahora sobre quién recae el peso de la prueba para demostrar la causa de la ruina. Recordemos que en el caso de marras el tribunal de instancia estimó que el promovente de la acción debía demostrar, de forma independiente y con prueba sustancial, que la ruina había sido causada por vicios de construcción y no por otras causas. Dicho foro determinó que los esposos Rivera-Rodríguez no habían probado afirmativamente que la causa de los desprendimientos era un vicio en la construcción original y no las obras de la remodelación que llevaron a cabo éstos posteriormente.

A. De las múltiples interpretaciones jurisprudenciales del Art. 1483 del Código Civil, *supra*, y de la doctrina, no surge con claridad sobre quién recae la obligación de probar la causa de la ruina. En la doctrina, por su parte, existe consenso en relación con que los Arts. 1591 del Código Civil español y 1792 del Código Civil francés, análogo el primero y similar el segundo a nuestro Art. 1483, *supra*, contienen una presunción controvertible de culpa que opera a favor del dueño de la obra. Sin embargo, hay posi-

---

[14] De todas formas, al presentarse la querella original no había caducado aún el plazo de dos (2) años que establece el Reglamento del Negocio de la Construcción.

ciones encontradas en relación con el alcance de dicha presunción.

Una mayoría de los tratadistas civilistas coincide en que dicho precepto establece una presunción controvertible de responsabilidad del constructor o arquitecto cuando se prueba que ocurrió la ruina de un edificio a causa de un vicio de la construcción o del suelo, respectivamente. Véanse: J.M. Manresa y Navarro, *Comentarios al Código Civil español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. X, Vol. 11, págs. 710–711; M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1986, T. XX, Vol. 2, pág. 279; J. Santos Briz, *La Responsabilidad Civil*, 6ta ed. rev., Madrid, Ed. Montecorvo, 1991, T. 2, págs. 731 y 735; G. García Cantero, *La responsabilidad por ruina de los edificios ex artículo 1.591 del Código Civil*, 16 An. Der. Civ. 1053, 1105 (1963); F. Bonet Ramón, *Código Civil Comentado*, Madrid, Ed. Aguilar, 1962, pág. 1266; A. De Cossio, citado por J. Herrera Catena, *Responsabilidades de la Construcción*, Granada, Ed. Gráficas del Sur, 1977, Vol. II, pág. 127; el jurista francés Troplong, citado por Q.M. Scaevola, *Código Civil concordado y comentado extensamente*, 2da ed., Madrid, Ed. Reus, 1951, T. XXIV, Vol. 2, pág. 104; M. Planiol y J. Ripert (Dr. Mario Díaz Cruz, Trad.), *Tratado práctico de Derecho Civil francés*, La Habana, Ed. Cultural, 1940, págs. 196–200. Véase, además, G. Velázquez, *Responsabilidad por los defectos en las edificaciones*, 20 Rev. Jur. U.P.R. 13, 25 (1950–1951). Entienden algunos de estos autores que el vicio o defecto de construcción es culposo de por sí. Véanse: Bonet Ramón, *op. cit.*; García Cantero, *op. cit.*, pág. 1106.

Otra vertiente de la doctrina concurre en que, probada la ruina, el Art. 1483 del Código Civil, *supra*, establece una presunción de culpa y de causa, la cual toca rebatir al contratista o al arquitecto al probar que ésta se debió a una fuerza mayor o a un caso fortuito. Véanse: Marcadé, citado por Herrera Catena, *op. cit.*, pág. 95; Gullón Ballesteros,

citado por Herrera Catena, *op. cit.*, pág. 127; los tratadistas italianos Chironi y Rubino, citados por Fernández Hierro, *op. cit.*, pág. 92; los latinoamericanos Spota (Argentina) y Sánchez Fontans (Uruguay), citados por Herrera Catena, *op. cit.*, págs. 114 y 115–116, respectivamente. A juicio de éstos, la ruina habla por sí sola. Herrera Catena es del criterio de que en los casos de ruina funcional el alcance de la presunción variará pues, "dada la gama posible de supuestos y la diversa medida en que tal 'impropiedad' concurra en la construcción", "no cabe sentar una conclusión apriorística". Herrera Catena, *op. cit.*, pág. 141. Según este autor, en algunos casos procederá aplicar la presunción con el máximo alcance y en otros, menos claros, habrá que matizar su alcance.

Scaevola adopta una posición intermedia entre estas dos (2) vertientes al sostener que cuando no sea factible afirmar la causa de la ruina, se presumirá que la causa no pudo ser otra que el vicio de la construcción. Scaevola, *op. cit.*, págs. 107–108. Estima este autor que "conocida la causa ... su prueba ... incumbe al propietario". Íd., pág. 106. Añade que "[c]uando se duda y no es posible negar al perjudicado la reparación, la presunción suple a la causa taxativa, porque se busca y toma como tipo para dirimir la duda el motivo más frecuente, el que más se repite, el que más comúnmente origina el perecimiento de las construcciones arquitecturales". Íd., pág. 107. A su juicio, ese "motivo más frecuente" lo constituye el vicio de la construcción. Íd., pág. 108, aludiendo a Duvergier.

Igualmente, Dalloz estima que no debe obligarse al propietario a probar los vicios y entiende que, en los casos en que ello resulte imposible, debe bastar con que éste pruebe que la ruina no se debe a falta por su parte. Citado por Scaevola, *op. cit.*, pág. 104.

Por nuestra parte, desde *Géigel v. Mariani*, supra, al examinar si el Art. 1483 del Código Civil, *supra*, establecía una presunción de culpa que obligara al contratista a de-

mostrar que no era responsable de los vicios de construcción, recalcamos que al respecto no existía unanimidad de criterio en la doctrina. Expresamos allí la conveniencia de adoptar una interpretación que favoreciera a la parte más débil, el consumidor dueño de la obra, por entender razonable que una vez el dueño demostrara que la obra estaba en ruinas, incumbiera al contratista demostrar que la ruina no se debía a defectos en la construcción, pues éste está en la mejor posición de probar cuál es la verdadera razón de la ruina. *Géigel v. Mariani*, supra, pág. 54. Sin embargo, a pesar de haber favorecido esa posición, en dicho caso el dueño había presentado prueba para establecer la causa de los defectos.

En 1982, al revocar una resolución del Tribunal Superior que confirmaba la resolución del D.A.Co. en la que se determinó la existencia de vicios de construcción, examinamos el texto de dicho articulado en *Interstate Gen. Corp. v. Soto*, supra. En esa ocasión nuestros pronunciamientos giraron en torno a la interpretación de lo que se consideraría "ruina", específicamente a su acepción más laxa de "ruina funcional". Adujimos a los criterios que guiarían nuestra discreción en la apreciación del defecto y, dentro de ese contexto, reconocimos la importancia del Reglamento del Negocio de la Construcción.

Resolvimos en dicho caso que la determinación del D.A.Co., a favor de los querellantes, no se fundaba en evidencia sustancial por entender que el testimonio del perito del D.A.Co. era extremadamente débil,[15] que la constructora había logrado librarse de responsabilidad al establecer que la causa de los defectos no le era imputable a ella y que los querellantes no hicieron esfuerzo alguno por refutar el testimonio pericial de la querellada. A juicio de este tribunal, no se probó ante el D.A.Co. que unas filtraciones

---

[15] En la vista administrativa celebrada ante el D.A.Co., el perito de esta dependencia admitió la existencia de filtraciones, mas expresó que en la residencia en cuestión no habían vicios de construcción. *Interstate Gen. Corp. v. Soto*, 113 D.P.R. 298, 301 (1982).

acaecidas siete (7) años después de la entrega de la residencia constituyeran la "ruina funcional".

 Posteriormente, en *Roselló Cruz v. García*, 116 D.P.R. 511, 519 (1985), reiteramos nuestra inclinación por la posición generalmente aceptada por la doctrina española moderna a los efectos de que el Art. 1483 del Código Civil, *supra*, establece una presunción *iuris tantum* de culpa o negligencia por parte de los constructores y arquitectos. En esa ocasión resolvimos que una vez establecido que la ruina de la estructura ocurrió por vicios del suelo, operaba contra el ingeniero que diseñó y supervisó la obra una presunción de negligencia o culpa, presunción que, en ese caso, quedó fortalecida por la opinión del perito de la parte demandante. *Roselló Cruz v. García*, supra, pág. 521. Además, para librarse de responsabilidad, correspondía al ingeniero establecer, mediante preponderancia de la prueba, que la causa que motivó los vicios no fue su intervención o que el suceso que ocasionó la ruina era totalmente imprevisible, o aun siendo previsible era inevitable con los conocimientos y las técnicas de la profesión al momento en que se realizó la obra.(16)

 Poco tiempo después, reprodujimos dicha posición en *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986), al expresar que la exigencia de la prueba de la culpa, cuya carga según las normas generales de responsabilidad extracontractual correspondería al actor, está mitigada por la presunción de culpabilidad del contratista y arquitecto que establece el citado Art. 1483. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, pág. 728. Esta presunción *iuris tantum* se fundamenta en el interés público que inspira la norma del precitado artículo y en la dificultad probatoria si el perjudicado tuviese el peso de la

---

(16) Nos referíamos a los conceptos de "caso fortuito" y de "fuerza mayor", los cuales deben interpretarse de forma restrictiva. Los acontecimientos de fuerza mayor se tratan de sucesos que estos profesionales tienen que tomar en consideración al edificar.

prueba de la culpa del autor del daño. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra.

■ De lo anterior podemos colegir que dicha jurisprudencia no resulta conflictiva entre sí, y que erró el tribunal de instancia al concluir que *Géigel v. Mariani*, supra, había sido revocado *sub silentio* por *Interstate Gen. Corp. v. Soto*, supra. El caso de *Interstate* no tiene el alcance que le confiere dicho foro. Lo resuelto en *Géigel*, y aclarado posteriormente en los casos citados, es que corresponde al propietario probar que la ruina ha tenido lugar por un vicio de la construcción, o por incumplimiento de las condiciones del contrato, si va a establecer la acción contra el constructor, o por un vicio del suelo o de la dirección si quiere dirigir su reclamación contra el arquitecto. Véanse: *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra; *Roselló Cruz v. García*, supra, pág. 519; *Acevedo Hernández v. Viñas Sorbá*, 111 D.P.R. 633 (1981); *Federal Ins. Co. v. Dresser Ind., Inc.*, supra, pág. 104.

Ciertamente, una vez probada la ruina del edificio se activa la aplicación del Art. 1483 del Código Civil, *supra*. El afectado debe establecer, además, que ésta se debe a alguno de los vicios en él citados, en aras de poder atribuir la responsabilidad al constructor o al arquitecto, según sea el caso.([17]) Probado que la ruina fue causada por vicios de

---

([17]) Puede darse el caso en que los presupuestos de vicios dispuestos en el Art. 1483, *supra*, concurran como causas de la ruina. Cuando en dichas situaciones no pueda determinarse el grado de participación de cada uno de los intervinientes en la realización del edificio, la doctrina y la jurisprudencia española admiten que ambos, contratista y arquitecto, responderán solidariamente. Al respecto, véanse: S. de 30 de diciembre de 1985, Núm. 6621, LII (Vol. III) Repertorio de Jurisprudencia 5667; S. de 23 de noviembre de 1985, Núm. 5634, LII (Vol. III) Repertorio de Jurisprudencia 4795; S. de 17 de febrero de 1984, Núm. 690, LI (Vol. I) Repertorio de Jurisprudencia 511; S. de 31 de octubre de 1979, Núm. 3462, XLVI (Vol. II) Repertorio de Jurisprudencia 2830; J. Herrera Catena, *Responsabilidades en la Construcción*, Granada, Ed. Gráficas del Sur, 1977, Vol. II, pág. 131; J. Cadarso Palau, *La responsabilidad decenal de arquitectos y constructores*, Madrid, Ed. Montecorvo, 1976, pág. 309. Así también cuando, luego de ventilado un juicio pericial resulte imposible atribuir la causa de la ruina a la intervención del constructor, del arquitecto o de algún otro participante en la ejecución de la obra o, aun, a la intervención del propio dueño, estimamos que deben responder solidariamente todos los intervinientes en la realización de la obra.

construcción o por incumplimientos a las condiciones del contrato, se presumirá la culpa del constructor. Si se prueba, por otro lado, que la causa fueron vicios del suelo o de la dirección, la ruina se presumirá atribuible al arquitecto.

No puede ser de otra forma, pues la exigencia de una prueba de culpa o negligencia por parte del dueño haría prácticamente imposible imponer la responsabilidad exigida por el citado Art. 1483. Recordemos que la responsabilidad que configura este precepto es de orden público, pues su razón de ser se atribuye a la importancia social de las edificaciones y al enorme interés público en la seguridad de lo que se edifica.

Hemos visto que corresponde al promovente de una acción al amparo del Art. 1483 del Código Civil, *supra*, establecer la causa de la ruina para poder responsabilizar a alguno de los intervinientes en la ejecución de la obra. Además, para poder presumir la culpa o negligencia del constructor, a tenor con dicho precepto legal, es necesario que la ruina se deba a un vicio en la construcción o al incumplimiento en las condiciones del contrato. Veamos qué se entenderá por vicios de construcción.

 La doctrina concurre en que los vicios de construcción son aquéllos concernientes a los materiales empleados y a la ejecución de la obra. Véanse: Manresa, *op. cit.*, pág. 710; Scaevola, *op. cit.*, pág. 114 (citando a Martínez Ángel, Oyuelos y Masselin); Santos Briz, *op. cit.*, pág. 741 (citando a Salom Antequera); Albaladejo, *op. cit.*, pág. 299; J. Cadarso Palau, *La responsabilidad decenal de arquitectos y constructores*, Madrid, Ed. Montecorvo, 1976, pág. 78; V. Torralba Soriano, *Los vicios del suelo: reflexiones sobre el artículo 1.591 del Código Civil*, 23 An. Der. Civ. 128 (1970). Asimismo se señala que "el empleo de materiales inadecuados, de mala calidad o poco resistentes para el destino de la fábrica, o su combinación contraria a las re-

glas del arte o la mala calidad de la ejecución constituyen vicios de la construcción". Scaevola, *op. cit.*, pág. 114.

 Por su parte, Albaladejo incluye entre los vicios de construcción más frecuentes los desprendimientos. Albaladejo, *op. cit.*, pág. 303. Véanse, además: S. de 3 de marzo de 1983, Núm. 1417, L (Vol. I) Repertorio de Jurisprudencia 1078; S. de 31 de enero de 1985, Núm. 223, LII (Vol. I) Repertorio de Jurisprudencia 191; S. de 16 de febrero de 1985, Núm. 558, LII (Vol. I) Repertorio de Jurisprudencia 461; S. de 2 de junio de 1985, Núm. 3620, LII (Vol. II) Repertorio de Jurisprudencia 3089; S. de 20 de diciembre, de 1985, Núm. 6611, LII (Vol. III) Repertorio de Jurisprudencia 5653. En particular, en la S. de 31 de enero de 1985, Núm. 223, LII (Vol. I) Repertorio de Jurisprudencia 191–192, el Tribunal Supremo español afirmó que reiteradamente han establecido:

> ... que el arruinamiento del edificio o de parte de él, causado por la mala calidad de los materiales empleados en la construcción lleva consigo en principio una responsabilidad múltiple —que ... alcanza, solidariamente, al profesional contratista ejecutor de la obra—, en tanto no se produzca la concreción individualizadora acerca de cuál de los intervinientes —técnicos y constructores— ha de asumir por su exclusiva negligencia el reproche de culpabilidad. (Énfasis suprimido.)

Por consiguiente, si el constructor emplea materiales inadecuados y debido a esta circunstancia se arruina el edificio, de ordinario el constructor será responsable. Ello es así debido a que corresponde a este profesional determinar, según los conocimientos técnicos y prácticos prevalecientes, si los materiales son adecuados o aptos para el fin que han de realizar una vez incorporados al edificio.

Como vemos, la parte querellante debe establecer que la causa de la ruina se debe a vicios de construcción para que se active la presunción de culpa del contratista contenida en el Art. 1483 del Código Civil, *supra.* Activada dicha presunción, corresponderá al contratista demostrar mediante

preponderancia de la prueba que la causa de la ruina es otra no imputable a él.

Examinemos si en el caso de marras se probó tal causa. Ello nos obliga a considerar si durante el trámite administrativo ante el D.A.Co. los esposos querellantes presentaron evidencia que llevara al juzgador a concluir que los desprendimientos en cuestión obedecieron a vicios de la construcción por los cuales debía responder la constructora querellada. Previo a nuestro análisis, examinemos en detalle lo acaecido en la vista ante el D.A.Co.

B. De los autos se desprende que en la vista administrativa celebrada ante el D.A.Co. declaró el Jefe de la Sección de Construcción, señor Orta Carmona, quien para todos los efectos virtió oralmente lo que decían sus informes de inspección.[18] Las inspecciones llevadas a cabo por Orta Carmona revelaron que la reparación y aplicación de enlucido de los plafones de la casa nunca fue efectuada debidamente, lo que provocó su embolsamiento y posterior desprendimiento, además, de que hubo desprendimientos en nuevas áreas.[19] En opinión de dicho inspector, la vivienda se había tornado inhabitable. Véanse: Informe de reinspec-

---

[18] En virtud de una orden emitida por el entonces Tribunal Superior, los esposos Rivera-Rodríguez sometieron una exposición narrativa del testimonio que el Jefe de la Sección de Construcción del D.A.Co. virtiera en la vista administrativa. Dicha exposición no fue objetada por la otra parte ni por el D.A.Co.

[19] El técnico del D.A.Co. realizó las observaciones siguientes:

"1–Los plafones de la segunda planta en la cocina y el comedor tienen desprendido el 70% del área de los enlucidos de los morteros....

"2–En la sala, el plafón tiene dos áreas de $3'6'' \times 4'\text{-}0$ y $5'\text{-}0 \times 6'\text{-}0$ respectivamente desprendidas del enlucido de mortero ....

"3–El pasillo tiene desprendido el 80% del enlucido ....

"4–El baño del pasillo tiene el enlucido desprendido en un área de $2' \times 3'$.

"5–La habitación izquierda también tiene un desprendimiento de $5'\text{-}0$ del enlucido de mortero del plafón ....

"6–La Habitación trasera derecha tiene cinco (5) grandes desprendimientos del enlucido de $3' \times 2'$, $4' \times 5'$, $4' \times 2'$, $10' \times 6'$ y $3' \times 2'$. Éstos representan aproximadamente el 80% del plafón incluyendo los que se aprecian sueltos.

"7–El plafón de la habitación 1 derecha tiene un área de humedad próxima a la pared de la cocina $12'' \times 4''$.

"8–El alero de la fachada principal tiene un desprendimiento de $3' \times 2'$ del enlucido de mortero." Informe de reinspección, Apéndice, págs. 55–56.

ción de 15 de marzo de 1991, Apéndice, pág. 56; Informe de Inspección de 21 de mayo de 1990, Apéndice, págs. 37–38.

Del último informe sometido por este inspector y evaluador al Juez Administrativo del D.A.Co., por conducto de la División de Investigaciones de dicha agencia, se desprende lo siguiente:

> Los plafones están defectuosos y las áreas del enlucido que aún se apreciaron allí, suenan huecas y/o por desprenderse. La vivienda está vacante y todos sus pisos de terrazo están cubiertos de polvo y de los pedazos del enlucido de los plafones.
>
> Los defectos antes señalados fueron requeridos y pactados para corregirse en marzo de 1988 .... Estas correcciones aunque se intentaron realizar su resultado fue deficiente o negativo, cosa que verificamos en la inspección del 21 de marzo de 1990.
>
> Finalmente consideramos que la reparación de aplicación de enlucidos de los plafones de la casa nunca fue efectuada debidamente, cosa que provocó su embolsamiento y desprendimiento posterior, el cual ahora apreciamos. Esto torna la vivienda en inhabitable por la alta probabilidad de daño físico a la persona que provoca el desprendimiento de los pedazos de enlucido de mortero. Consideramos que la situación es de ruina funcional.
>
> Considero pertinente que para la eficacia y permanencia de un nuevo enlucido requiere remoción de todo lo existente, aplicar un aditivo para adhesión y limpieza profunda de las superficies antes. Mi opinión sería utilizar un material con otra base para plafones y no morteros. Informe de reinspección de 21 de mayo de 1990, Apéndice, pág. 56.

A base de la prueba desfilada, el D.A.Co. concluyó que los alegados defectos constituían vicios de construcción que afectaron la utilización y el disfrute de la residencia, causando su ruina funcional. Véanse: Resoluciones del D.A.Co. de 29 de abril de 1992 y de 7 de agosto de 1992 (en reconsideración). Por ello ordenó la reparación de los defectos o, en su defecto, el pago de una indemnización equivalente al costo de reparación.

En revisión, el tribunal a quo entendió que, vencido el plazo reglamentario establecido en el Reglamento del Negocio de la Construcción, la parte querellante tenía que

demostrar de forma independiente y con evidencia sustancial que la ruina había sido causada por vicios de la construcción. Para ello entendió que era necesario contratar peritos que pudieran examinar la estructura alegadamente ruinosa y declarar en cuanto a cuál fue la causa más posible de dicha ruina. Razonó que en el caso de autos, al no estar en disputa que los esposos querellantes habían efectuado remodelaciones a la residencia, para las cuales se habían "picado" columnas y otras partes estructurales de ésta, éstos debieron haber probado que la causa de los desprendimientos fue un vicio en la construcción original y no el resultado de las obras que se llevaron a cabo posteriormente. A su juicio el matrimonio querellante no presentó ante el D.A.Co. prueba alguna sobre este particular y pretendía que se infiriera del hecho del "engalletado" o desprendimiento que la causa fue un vicio de construcción.

Ante nos, el matrimonio recurrente alega que el testimonio del Jefe de la Sección de Construcción del D.A.Co. constituyó en este caso prueba pericial suficiente de que la causa de la ruina de la vivienda se debió a vicios de la construcción atribuibles al contratista. Añade que éste poseía las cualificaciones y podía declarar como perito en cuanto a la causa de los vicios de construcción. Llaman la atención al hecho de que en la vista administrativa no fueron impugnadas sus credenciales ni su testimonio.

Sin duda alguna, durante el trámite administrativo, el dueño y el inspector del D.A.Co. establecieron que los desprendimientos del enlucido del techo se debieron a que éste nunca fue aplicado debidamente, de forma tal que quedara adherido permanentemente. Por esto se recomendó remover todo el empañetado existente, limpiar profundamente las superficies y aplicar posteriormente un aditivo para adhesión. Incluso, el inspector recomendó específicamente que se utilizara un material con otra base para plafones y no mortero.

La evidencia presentada no fue impugnada ni rebatida. Ésta demostró que se emplearon materiales inadecuados e impropios para su destino y que ello fue lo que llevó al posterior desprendimiento del techo, circunstancia que causó eventualmente la ruina funcional de la vivienda. En vista de que la constructora no presentó evidencia en contrario, no cumplió con el peso de la prueba para rebatir la presunción *iuris tantum* de culpa, activada con la demostración de la ruina y de que ella respondió a vicios de la construcción.

Los esposos querellantes presentaron evidencia adecuada para llevar a la agencia a concluir que los desprendimientos obedecieron a vicios de construcción por los cuales debía responder la contratista querellada. Entender lo contrario sería desvirtuar el alcance de la función investigativa y de asesoramiento del D.A.Co.[20]

---

[20] Al respecto, la Ley Orgánica del D.A.Co., según enmendada, estipula entre los poderes y las facultades del Secretario de D.A.Co.:

"(b) Atender consultas y ofrecer asesoramiento técnico y, además, prestar ayuda legal a los consumidores en casos meritorios.

"(c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios ·adquiridos o recibidos del sector privado de la economía." Art. 6(b) y (c) de la Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341e(b) y (c))."

Además, entre las funciones que le fueron transferidas a D.A.Co. de la Oficina del Oficial de Construcción se encuentran:

"(b) Nombra[r] el personal necesario para cumplir y llevar a cabo las funciones y obligaciones que se establecen en este Capítulo y a tales fines podrá también contratar todos aquellos servicios profesionales y de consulta que estimare pertinente....

"(d) Lleva[r] a cabo las investigaciones e inspecciones que considere convenientes y necesarias a iniciativa propia o mediante querella presentada de acuerdo con este Capítulo para determinar si una persona ha dejado de cumplir con las disposiciones de la misma y para obtener información útil a la administración de cualquiera de sus disposiciones.

"(g) Investiga[r] y adjudica[r] las querellas sobre prácticas indeseables o cualquier violación a las disposiciones de este Capítulo que se traigan ante su consideración, concediendo los remedios pertinentes conforme a derecho." Art. 4(b), (d) y (g) de la Ley Núm. 130 de 13 de junio de 1967, según enmendada, 17 L.P.R.A. sec. 504(b), (d) y (g).

A tenor con lo anterior, en la Sec. 2(8) del Reglamento Núm. 2268 para Regular las Distintas Actividades que se Llevan a Cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico de 17 de agosto de 1977, pág. 4, se facultó al Secretario del D.A.Co. a "investigar y adjudicar las querellas radicadas sobre prác-

■ No albergamos duda alguna en cuanto a que los inspectores del D.A.Co. pueden declarar en carácter de peritos, siempre que tengan las credenciales o el peritaje.([21]) Es en estas personas en quienes el Secretario del D.A.Co. ha delegado la facultad que le confiere la ley para llevar a cabo investigaciones e inspecciones para velar por el fiel cumplimiento de la Ley del Oficial de Construcción y de brindar asesoramiento técnico y la ayuda legal a los consumidores. 3 L.P.R.A. sec. 341e(b).

■ Recordemos que el D.A.Co., como agencia protectora de los derechos del consumidor, tiene entre sus encomiendas proteger los intereses de los compradores de viviendas, ente más débil en las transacciones llevadas a cabo en el mercado de viviendas, y los cuales muchas veces no tienen los recursos necesarios para hacer valer sus derechos frente a las poderosas empresas constructoras.

Por todo lo anterior, discrepamos del foro de instancia con respecto a que el matrimonio querellante se limitó a probar el estado de ruina descansando en una presunción de relación causal con respecto a que la ruina era atribuible a vicios de construcción y culpa del contratista. Además, al atender el aspecto de la remodelación de la vivienda, argumentado por la constructora en el recurso de revisión, el ilustre foro de instancia tomó en consideración factores que no fueron objeto de prueba en la vista administrativa celebrada ante el D.A.Co. De hecho, la constructora no pasó prueba para establecer que los desprendimientos eran atribuibles a dicha remodelación. Simple-

---

ticas indeseables en el negocio de la construcción; concediendo los remedios pertinentes conforme a derecho".

([21]) Según la Regla 53 de Evidencia, 32 L.P.R.A. Ap. IV, sólo si hay objeción de parte es que deben probarse las cualificaciones del testigo pericial. Ésta dispone en su inciso (a) que:

"Toda persona está cualificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarla como un experto o perito en el asunto sobre el cual habrá de prestar testimonio. Si hubiere objeción de parte, dicho especial conocimiento, destreza, adiestramiento o instrucción deberán ser probados antes de que el testigo pueda declarar como perito." 32 L.P.R.A. Ap. IV, R. 53(a).

mente sugirió continuamente que la remodelación "pudo haber ocasionado" los desprendimientos. Por lo tanto, fueron correctas en derecho las conclusiones del D.A.Co.

## V

Recapitulando, para poder deducir contra el constructor o contra el arquitecto la responsabilidad nacida de la ruina, resulta necesario probar que ella se debe a los supuestos del artículo. El promovente de la acción debe demostrar que la ruina ha tenido lugar como resultado de un vicio de construcción o del incumplimiento con alguna de las condiciones del contrato para que se active una presunción de culpa por parte del constructor, o de un vicio del suelo o de la dirección, para activar la presunción contra el arquitecto. Una vez probadas la ruina y la causa de ésta, no tendrá que demostrar la culpa del constructor o del arquitecto. Por tratarse de una presunción *iuris tantum*, el constructor podrá tratar de rebatirla demostrando que la causa de la ruina no ha sido un vicio de construcción imputable a él o, en su caso, el arquitecto si de vicio del suelo o de la dirección se trata. Si no puede establecer esto, será responsable conforme al citado Art. 1483.

Como hemos visto, no está vigente en Puerto Rico, y nunca lo ha estado, una presunción de causa y culpa que se active una vez probado el estado ruinoso de una edificación, contrario a lo que estimó el tribunal a quo. No por ello quedan indefensos los que sufran perjuicios por la ruina, quienes por lo regular son legos en materia de construcción y han estado ajenos al proceso de construcción. Éstos cuentan con el asesoramiento técnico y legal de D.A.Co., agencia que tiene una obligación estatutaria de proteger los intereses del consumidor, en particular, a los compradores de viviendas.

Por las razones que anteceden, *se expedirá el auto y se revocará la sentencia recurrida. Por ende, se confirma la resolución de D.A.C.O.*

*Se dictará sentencia de conformidad.*

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Fuster Berlingeri concurrieron sin opinión escrita. El Juez Asociado Señor Negrón García no intervino.