Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| PABLO TORO MATOS<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202500037 | Revisión procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre:<br>Ocupación de microondas<br><br>Remedio Administrativo Núm.: B-1318-24 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de marzo de 2025.

Comparece ante nos el señor Pablo Toro Matos (señor Toro Matos o recurrente), por derecho propio y de forma *pauperis*, en solicitud de que revisemos una *Respuesta al Miembro de la Población Correccional* emitida el 9 de octubre de 2024 por la División de Remedios Administrativos (DRA) del Departamento de Corrección y Rehabilitación (DCR).[1] En esta, se informó que el teniente Joel Loubriel nunca le faltó el respeto al señor Toro Matos y que se retiró el horno microondas de su unidad por ocuparse contrabando en la misma.

Por los fundamentos que expondremos a continuación, se adelanta la confirmación de la determinación recurrida.

**I.**

El asunto ante nuestra consideración tuvo su génesis el 23 de septiembre de 2024, fecha en que el señor Toro Matos presentó una *Solicitud de Remedio Administrativo* ante la DRA.[2] Mediante la misma, expuso que el 16 de septiembre de 2024, el teniente Loubriel removió

---

[1] Apéndice de *Solicitud de Revisión Judicial*, Anejo 2.
[2] *Íd.*, Anejo 1.Recibida el 25 de septiembre de 2024 por el evaluador.

el horno microondas del módulo 1-A y les indicó a los miembros de la población correccional que lo que ocurriera en el referido módulo era culpa del recurrente.

Posteriormente, el 9 de octubre de 2024, la DRA emitió una *Respuesta al Miembro de la Población Correccional,* en la que adjuntó la contestación del área concernida.[3] En la referida comunicación, el teniente O'Neill Montalvo respondió que el teniente Loubriel alegó que en ningún momento le faltó el respeto al recurrente y que el sargento Torres retiró el horno microondas por encontrar contrabando.

Inconforme, el 22 de octubre de 2024, el recurrente presentó una *Solicitud de Reconsideración.*[4] En esta, arguyó que la respuesta al miembro correccional no era cónsona con la verdad, dado que teniente Loubriel ocupó el horno microondas del módulo 1-A por dos (2) ocasiones, sin motivo alguno. A saber, expresó que el electrodoméstico se ocupó el 24 de agosto de 2024 y el 16 de septiembre de 2024.

En respuesta, el 11 de diciembre de 2024, la DRA emitió una *Resolución* en la que confirmó y amplió la respuesta recibida por parte del teniente Montalvo.[5] En esta, consignó las siguientes determinaciones de hechos:

1. El recurrente present[ó] [una] Solicitud de Remedios Administrativos el 25 de septiembre de 2024 ante el Evaluador de Remedios Administrativos, Maribel García Charriez de la Oficina de Bayamón. En su escrito alega [una] situación surgida con el Teniente Joel Loubriel.
2. El 25 de septiembre de 2024 se hizo Notificación dirigida al Teniente Oneill Montalvo, Comandante de la Guardia, Institución Correccional Bayamón 501.
3. El 8 de octubre de 2024 se recibió [una] respuesta por parte del Teniente Oneill Montalvo, Comandante de la Guardia, Institución Correccional Bayamón 501.
4. El 17 de octubre de 2024 se hace la entrega al recurrente del Recibo de Respuesta.
5. El 1 de noviembre de 2024, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que está desacuerdo con la contestación recurrida.

---

[3] *Íd.*, Anejo 2. Notificada el 17 de octubre de 2024.
[4] *Íd.*, Anejo 3.
[5] *Íd.*, Anejo 5. Notificada el 28 de diciembre de 2024.

La DRA expuso que orientó al señor Toro Matos que, en primera instancia, esta situación se la debió plantear al teniente Montalvo como Comandante de la Guardia y al señor Víctor Maldonado Vázquez como Superintendente de la Institución Correccional Bayamón 501 para que agotara el trámite institucional y permitiera que los funcionarios tomaran las determinaciones sobre sus alegaciones. A su vez, estableció que el teniente Loubriel ya no trabajaba en la Institución Bayamón 501.

Aun insatisfecho, el señor Toro Matos presentó ante nos el presente recurso de revisión judicial, en el que planteó que la DRA cometió los siguientes errores:

1. ERRÓ LA DIVISIÓN DE REMEDIOS ADMINISTRATIVOS AL NO TOMAR EN CONSIDERACIÓN LAS ALEGACIONES DEL RECURRENTE SOBRE EL TENIENTE JOEL LOUBRIEL, Y CONCLUIR, A BASE DE LA RESPUESTA EMITIDA POR EL TENIENTE ONEILL MONTALVO, QUE LOS HECHOS ALEGADOS POR EL RECURRENTE NO OCURRIERON POR EL HECHO DE QUE EL TENIENTE LOUBRIEL NEGÓ QUE OCURRIERAN.

2. ERRÓ LA DIVISIÓN DE REMEDIOS ADMINISTRATIVOS AL CONCLUIR QUE LA SOLICITUD DE REPARO DE AGRAVIO PRESENTADA POR EL RECURRENTE ANTE EL DCR RESPONDE A UN ASUNTO QUE SE RELACIONADA A LA REMOCIÓN DE UN HORNO MICROONDAS DE LA UNIDAD DE VIVIENDA 1-A DE LA INSTITUCIÓN 501, Y NO POR ACCIONES IMPROPIAS POR PARTE DEL TENIENTE LOUBRIEL QUE PUSIERON EN RIESGO LA SEGURIDAD Y LA VIDA DEL RECURRENTE.

3. ERRÓ LA DIVISIÓN DE REMEDIOS ADMINISTRATIVOS AL CONCLUIR QUE LA SITUACIÓN QUE PLANTEÓ EL RECURRENTE EN PRIMERA INSTANCIA DEBIÓ SER PLANTEADA ANTE EL TENIENTE ONEILL MONTALVO, COMANDANTE DE LA GUARDIA Y EL SR. V[Í]CTOR MALDONADO VÁZQUEZ, SUPERINTENDENTE DE LA INSTITUCIÓN CORRECCIONAL BAYAMÓN 501.

En esencia, el recurrente expresó que si bien en la *Respuesta al Miembro de la Población Correccional* surgió que se le retiró el privilegio del horno microonda, la DRA se limitó a establecer que los hechos alegados por el señor Toro Matos no ocurrieron por así simplemente aseverarlo el teniente Loubriel. Por ello, el recurrente sostuvo que la DRA se parcializó con la oficialidad de la institución correccional.

De otro lado, el señor Toro Matos manifestó que la DRA erró al determinar que debía presentar la situación, en primera instancia, al teniente Montalvo, puesto que su *Solicitud de Remedio Administrativo* se dirigió hacia dicho empleado. Además, esgrimió que remover al teniente Loubriel de la Institución Correccional 501, no lo hizo impune de su acción de responsabilizar al recurrente de lo que ocurriera en el módulo 1-A, previo a retirar el privilegio del microondas. Indicó que, por lo anterior, el teniente Loubriel colocó su vida y seguridad en riesgo. Por ello, nos solicitó determinar que la acción del teniente Loubriel fue caprichosa, ilegal e irrazonable.

Por su parte, el 27 de febrero de 2025, la Oficina del Procurador General de Puerto Rico (OPG), en representación del DCR, señaló que del récord administrativo del caso surgió que el señor Toro Matos incumplió con el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional,* Reglamento Núm. 8583, Departamento de Estado, 4 de mayo de 2015. Lo anterior, ya que no presentó su situación al área concernida, tal como lo requería la Regla XIII (7) (5) (b) del Reglamento Núm. 8583. La OPG expresó que ante tal omisión, se impidió realizar una investigación adecuada y el evaluador tenía la facultad de desestimar la solicitud del remedio administrativo, tal como lo realizó. A su vez, puntualizó que el recurrente no especificó cómo se puso en riesgo su vida y seguridad por las actuaciones del teniente Loubriel, quien ya no trabajaba en la institución penal. Por lo anterior, la OPG entendió que su reclamo se tornó académico y no justiciable.

En atención a los errores planteados, procedemos a exponer la normativa jurídica atinente a este recurso.

## II.

### A. Revisión judicial

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, según enmendada, 3 LPRA sec.

9671 *et seq.* (LPAUG), dispone un procedimiento uniforme para la revisión judicial de una adjudicación administrativa. *Gobierno PR v. Torres Rodríguez*, 210 DPR 891, 907 (2022); *Cordero Vargas v. Pérez Pérez*, 198 DPR 848, 857 (2017). Mediante este recurso, el Tribunal de Apelaciones puede revisar las decisiones, órdenes y resoluciones finales emitidas por un organismo o una agencia administrativa. Véase, Artículo 4.006(c) de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y. Su propósito es asegurar que el organismo administrativo actuó conforme con el poder delegado y la política legislativa. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); D. Fernández Quiñones, <u>*Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*</u>, 3ra ed., Bogotá, Forum, 2013, pág. 669.

Ahora bien, de ordinario, los tribunales apelativos debemos otorgar deferencia a las determinaciones de los organismos administrativos, puesto que poseen la experiencia y el conocimiento especializado sobre el asunto que se le delegó. *Transporte Sonnell, LLC v. Junta Subastas Aut. Carreteras*, 2024 TSPR 82; *Violí Violá Corp. et al., v. Mun. Guaynabo*, 213 DPR 743 (2024); *Otero Rivera v. Bella Detail Group, Inc., y otros*, 2024 TSPR 70; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Por ello, las determinaciones administrativas gozan de una presunción de legalidad y corrección. *Transporte Sonnell, LLC v. Junta Subastas Aut. Carreteras, supra; Otero Rivera v. Bella Detail Group, Inc., y otros, supra; Torres Rivera v. Policía de PR,* supra. Esta presunción subsiste mientras la parte que impugne la decisión administrativa no demuestre que las determinaciones de hechos no están basadas en el expediente o que las conclusiones de derecho alcanzadas por la agencia son irrazonables. *OEG v. Martínez Giraud, supra,* pág. 89.

En este sentido, la revisión judicial está cimentada en el criterio de razonabilidad de la actuación administrativa. *Hernández Feliciano v. Mun. Quebradillas, supra*; pág. 115; *Torres Rivera v. Policía de PR, supra*. A saber, los foros apelativos estamos limitados a evaluar tres (3) aspectos: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos se sostienen por evidencia sustancial contenida en el expediente administrativo, y (3) si las conclusiones de derecho de la agencia se sostienen. *Hernández Feliciano v. Mun. Quebradillas, supra*; *Torres Rivera v. Policía de PR, supra*, págs. 626-627; *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839-840 (2021); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020).

Los foros revisores sostendremos las determinaciones de hechos de la agencia, si están basadas en evidencia sustancial que obra en el expediente administrativo. Sec. 4.5 de LPAUG, *supra*, sec. 9675. La evidencia sustancial es aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión. *OEG v. Martínez Giraud, supra*, pág. 90. Por otro lado, las conclusiones de derecho de la agencia serán revisables en todos sus aspectos. Sec. 4.5 de LPAUG, *supra*, sec. 9675. Sin embargo, los foros apelativos debemos otorgarle peso a la interpretación de la agencia sobre aquellas leyes que les corresponde aplicar. *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006). Esto, puesto que "las agencias administrativas son instrumentos necesarios para la interpretación de la ley". D. Fernández Quiñones, *op. cit.,* pág. 716. De esta forma, la revisión judicial se circunscribirá a determinar si la interpretación del organismo administrativo fue razonable, a la luz de las pautas establecidas por la Legislatura. *Hernández, Álvarez v. Centro Unido, supra*, pág. 616. Si la interpretación de la agencia fue razonable, aun cuando no sea la única, los tribunales le otorgaremos deferencia. *Íd.* No obstante, la deferencia a la interpretación administrativa no significa que renunciaremos a nuestra función

revisora, ya que debemos diferir cuando la agencia (1) erró al aplicar la ley; (2) actuó de forma arbitraria, irrazonable o ilegal, o (3) lesionó derechos constitucionales fundamentales. *Íd.*; *Hernández Feliciano v. Mun. Quebradillas, supra*; *Torres Rivera v. Policía de PR, supra*, pág. 628; *Fuertes y otros v. ARPe*, 134 DPR 947, 953 (1993).

Por último, las cuestiones mixtas de hechos y de derecho se considerarán como cuestiones de derecho, por lo que serán revisables en toda su extensión. *Super. Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Rivera v. A&C Development Corp.*, 144 DPR 450, 461 (1997).

### B. Solicitud de remedio administrativo

El Reglamento Núm. 8583, *supra*, rige lo concerniente a las solicitudes de remedios administrativas de los miembros de la población correccional. Procede de la intención de la *Civil Rights of Institutionalized Person Act*, 42 USC 1997 *et seq.*, en que todo miembro de la población correccional disponga de un organismo administrativo para que, en primera instancia, pueda presentar una solicitud de remedio, minimizar las diferencias con el personal y evitar o reducir la presentacion de pleitos en los tribunales.

Una solicitud de remedio es un recurso que presenta un miembro de la población correccional por escrito, sobre una situación que afecta su calidad de vida y seguridad, relacionado con su confinamiento. Regla IV (24) del Reglamento Núm. 8583, *supra.* Dicha situación debe estar relacionada directa o indirectamente con:

a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional.
b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.
c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad". [...]

En lo pertinente, la Regla XII del Reglamento Núm. 8583, *supra*, establece el procedimiento que se debe llevar a cabo para presentar una solicitud de remedio administrativo: A saber:

1. Para iniciar la Solicitud de Remedios Administrativos[,] el miembro de la población correccional deberá completar el Formulario de la Solicitud establecido para ello, el cual será provisto por la División.
2. El miembro de la población correccional tendrá quince (15) días calendario, contados a partir de advenir en conocimiento de los hechos que motivan su solicitud para radicar la misma, salvo que medie causa o caso fortuito que le impida realizarla. [...]
3. Cada institución correccional contará con buzones donde los miembros de la población correccional depositarán las Solicitudes de Remedio. No se aceptarán solicitudes que se envíen por correo, con excepción de aquellas presentadas sobre violencia sexual. [...]
4. El Evaluador y oficial correccional designado por el superintendente son las personas responsables de visitar periódicamente las áreas de vivienda de las instituciones o facilidades correccionales para recoger las solicitudes e el buzón, durante horas y días laborables. Será responsabilidad del superintendente o del comandante de la guardia asignar un oficial correccional para que ofrezca la seguridad a éstos.
5. El evaluador le entregará al miembro de la población correccional copia de la Solicitud de Remedio debidamente enumerada, fechada, firmada y codificada. Mantendrá un índice de las solicitudes, identificándolas mediante la asignación de un número. La entrega de la copia de la solicitud al miembro de la población correccional deberá efectuarse en un término de diez (10) días laborables, salvo que medie justa causa para la demora.
6. El Evaluador referirá la Solicitud de Remedio al superintendente de la institución, encargado del Hogar de Adaptación Social, Director Médico o al coordinador del Centro de Tratamiento Residencial en un término no mayor de quince (15) días laborables a partir del recibo de la misma.
7. Las solicitudes de remedios administrativos referidas al director médico se tramitarán, para conocimiento, con copia de la solicitud al superintendente de la institución en la cual se encuentre confinado. [...]

Durante este proceso, el miembro de la población correccional tiene las siguientes responsabilidades esbozadas en la Regla VIII del Reglamento Núm. 8583, *supra*:

1. Será responsabilidad del miembro de la población correccional presentar las Solicitudes de Remedios en forma clara, concisa y honesta, estableciendo las fechas y nombres de las personas involucradas en el incidente. Igualmente ofrecerá toda información necesaria para dilucidar su reclamo efectivamente.
2. El miembro de la población correccional tendrá la responsabilidad de presentar las solicitudes de remedios de buena fe, según su mejor conocimiento y utilizando un lenguaje adecuado.
3. [...]
4. [...]
5. [...]
6. Los miembros de la población correccional deberán depositar su solicitud, en sobre sellado provisto por el Departamento de Corrección y Rehabilitación, en el buzón ubicado en las unidades de vivienda en instancias en que el oficial correccional sea quien recoja las mismas. [...]

Una vez recibida la Solicitud de Remedio, la Regla XIII del Reglamento Núm. 8583, *supra*, dispone lo siguiente con relación al procedimiento para emitir respuestas:

1. El Evaluador utilizará todos los procedimientos que estime necesarios para la obtención de la información requerida para brindar una respuesta adecuada al miembro de la población correccional. En aquellos caso en que el Evaluador a cargo de emitir respuesta necesite información contenida en algunos de los expedientes del miembro de la población correccional (social, criminal o médico) o cualquier otro expediente o documentos oficiales, podrá solicitar una certificación o interpretación del expediente sobre la información requerida.
2. Será obligación del superintendente de la institución, encargado del Hogar de Adaptación Social, o coordinador del Centro de Tratamiento Residencial, director médico, supervisor de servicios de alimentos, dar seguimiento a las áreas pertinentes para que le respondan sobre las alegaciones vertidas en la solicitud y poder cumplir con el término de quince (15) días laborables desde que fue notificado por escrito. La respuesta a la solicitud no podrá ser realizada por un empleado que haya estado involucrado en la situación planteada. La misma deberá ser emitida por el supervisor inmediato.
3. [...]
4. Una vez el Evaluador recibe la información requerida, contestará y entregará por escrito la respuesta al miembro de la población correccional dentro del término de veinte (20) días laborables. [...]
5. El Evaluador tiene la facultad para desestimar las siguientes solicitudes:
    a. Que no haya cumplido con el trámite procesal del presente Reglamento; incluyendo lo establecido en la Regla VII.
    b. **Solicitud de Remedio Administrativo sin haberse gestionado la solicitud del problema planteado con el superintendente de la institución, encargado del Hogar de Adaptación Social, coordinador del Centro de Tratamiento Residencial, o con el área concerniente. [...] (Énfasis nuestro).**

Evaluada la normativa jurídica pertinente a este recurso, procedemos a aplicarla a los hechos de este caso.

**III.**

En el presente caso, el señor Toro Matos planteó que la DRA erró al desestimar su *Solicitud de Remedio Administrativo*. Alegó que la determinación recurrida se debió a que el organismo administrativo se parcializó con las alegaciones del teniente Loubriel.

Sin embargo, el expediente de este caso reflejó que el DRA desestimó la *Solicitud de Remedio Administrativo* a tenor con la Regla XIII (5) (b) del Reglamento Núm. 8583, *supra,* por entender que el

recurrente no presentó su reclamo de conformidad con el referido cuerpo reglamentario. Ello, puesto que el señor Toro Matos no gestionó la solución del problema con el superintendente o el área concerniente de la institución, antes de presentar la *Solicitud de Remedio Administrativo* ante la DRA y la Evaluadora examinarla. Es decir, el recurrente no planteó la situación, en primera instancia, ante el Superintendente de la Institución Correccional Bayamón 501.

Tras evaluar los hechos del presente caso, de acuerdo con la normativa jurídica antes reseñada, no encontramos razón alguna para no otorgarle deferencia a la determinación administrativa recurrida por el señor Toro Matos. Estimamos que el organismo administrativo no erró en la aplicación de la disposición reglamentaria, lesionó sus derechos constitucionales, ni actuó de manera arbitraria, irrazonable e ilegal. Pues, el DCR actuó correctamente al desestimar la solicitud presentada por el recurrente, toda vez que incumplió con el trámite institucional para presentar una *Solicitud de Remedio Administrativo*. Ello, según se demostró en las determinaciones de hechos sostenidas por la evidencia que obró en el expediente administrativo.

Ante ello, procede confirmar la determinación administrativa.

**IV.**

Por las razones que anteceden, se confirma la determinación recurrida.

El DCR deberá entregar copia de la presente *Sentencia* al señor Toro Matos en cualquier institución donde se encuentre recluido.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones