Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| ALONDRA CONTRACTOR CORP.  Recurrente  V.  JUNTA DE SUBASTA DE LA ASG  Recurrida | KLRA202500230 | Revisión procedente de la Junta Revisora de Subastas  Caso Núm. JR-25-104  Solicitud de Propuesta Núm.: RFP-23-J-19772  Sobre: Contratos para el mantenimiento y reconstrucción de carreteras, caminos y puentes |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de junio de 2025.

Comparece Alondra Contractor Corp. (ACC o recurrente) mediante recurso de revisión judicial y solicita la revocación de la *Resolución* emitida y notificada el 31 de marzo de 2025 por la Junta Revisora de Subastas de la Administración de Servicios Generales (Junta Revisora de Subastas de ASG).[1] En esta, la referida Junta confirmó la *Resolución de Adjudicación* emitida y notificada el 24 de enero de 2025 por la Junta de Subastas de la ASG. En dicha determinación, la Junta de Subastas de ASG había determinado que ACC no era un licitador cualificado.

Por los fundamentos que expondremos a continuación, se adelanta la confirmación de la determinación recurrida.

**I.**

De los autos ante nuestra consideración se desprende que, el 15 de marzo de 2024, la Junta de Subastas de ASG publicó una invitación y pliego de solicitud de propuestas selladas con sus anejos para el RFP-23-J-19772 sobre *Contrato de selección múltiple para el*

---

[1] Véase apéndice de la recurrente, págs. 1-15.

Número Identificador
SEN2025_____

*mantenimiento y reconstrucción de carreteras, caminos y puentes con asignación de fondos no federal para todas las entidades gubernamentales, entidades exentas y municipios del Gobierno de Puerto Rico.*[2] El 19 de abril de 2024, la Junta de Subastas de ASG celebró una Reunión Virtual pre subasta cuya participación era de carácter compulsoria. A esta comparecieron veintinueve compañías, entre ellas ACC. Cabe señalar que antes y después de la celebración de dicha reunión, el RFP-23-J-19772 fue objeto de las siguientes enmiendas:

1. *Enmienda Núm. 1* de 4 de abril de 2024, sobre recalendarización de las fechas del RFP.[3]
2. *Enmienda Núm. 2* de 15 de abril de 2024, sobre Tabla de Cotizar Enmendada I y Manual de Rotulación.[4]
3. *Enmienda Núm. 3* de 3 de mayo de 2024, sobre recalendarización de fecha límite para contestar preguntas de los licitadores.[5]
4. *Enmienda Núm. 4* de 13 de mayo de 2024, sobre cambio de fecha límite para contestar preguntas de los licitadores.[6]
5. *Enmienda Núm. 5* de 15 de mayo de 2024, sobre Tabla de Cotizar Enmendada II, Especificaciones 402 y 702, fecha límite para la presentación de ofertas y Acto de Apertura.[7]
6. *Enmienda Núm. 6* de 23 de mayo de 2024, sobre cambio de fecha límite para la presentación de ofertas y Acto de Apertura.[8]
7. *Enmienda Núm. 7* de 3 de junio de 2024, sobre enmiendas a las especificaciones.[9]

En la Sección 8 del RFP-23-J-19772 se detalló que las especificaciones incluidas en el pliego son el conjunto de características físicas, funcionales, estéticas y de calidad de cada uno de los bienes, obras o servicios que se solicitan.[10] Las especificaciones servirían de guía para describir detalladamente lo que se solicita. De otro lado, se advirtió que los proponentes tenían la obligación de cumplir cabalmente con cada uno de los detalles incluidos en las

---

[2] Véase apéndice de la recurrente, págs. 51-140.
[3] Véase apéndice de la recurrente, págs. 141-143.
[4] Véase apéndice de la recurrente, págs. 144-153.
[5] Véase apéndice de la recurrente, págs. 158-159.
[6] Véase apéndice de la recurrente, págs. 160-161.
[7] Véase apéndice de la recurrente, págs. 162-163.
[8] Véase apéndice de la recurrente, págs. 164-165.
[9] Véase apéndice de la recurrente, págs. 166-167.
[10] Véase apéndice de la recurrente, pág. 79.

especificaciones. De acuerdo con la Sección 4.1 del RFP-23-J-19772, la evaluación, selección y adjudicación de la subasta se basaría en el cumplimiento con las especificaciones, términos y condiciones, **desempeño pasado, capacidad financiera, capacidad técnica**, precio y lo que representa el mejor valor para el Gobierno de Puerto Rico. (Énfasis nuestro).

Según se desprende del RFP-23-J-19772, el proceso evaluativo estaba compuesto de **tres fases**. En la **primera fase** la Junta de Subastas de ASG evaluaría preliminarmente las propuestas para verificar su cumplimiento con los términos y condiciones insubsanables o compulsorios establecidos en el pliego de subasta. Si del resultado de la evaluación surgía que el licitador incumplió con uno o más de los criterios dispuestos en el Anejo VI, **la Junta de Subastas de ASG rechazaría de plano la propuesta sin ulteriores procedimientos**. Por el contrario, aquellas propuestas que cumplieran con todos los criterios continuarían en el proceso de evaluación. Los criterios de evaluación en esta primera fase fueron:

| Criterios | Puntuación Máxima |
|---|---|
| Desempeño Pasado | 25 |
| Capacidad Financiera | 10 |
| Capacidad Técnica | 35 |
| Precio | 30 |
| **TOTAL** | **100** |

En la **segunda fase**, el Comité Evaluador de Subastas y Propuestas o el Especialista en Compras evaluarían mediante la otorgación de puntos el desempeño pasado, capacidad financiera, capacidad técnica, término de entrega, garantía y precio de los proponentes. Posteriormente, el Comité Evaluador de Subastas y Propuestas o el Especialista en Compras sometería ante la Junta de Subastas de ASG su recomendación debidamente fundamentada. Luego de esto, la Junta de Subastas de ASG aprobaría en coordinación con la agencia requirente la distribución de puntuación para los distintos criterios.

En la **tercera fase**, la Junta de Subastas de ASG podría determinar si adjudicaba la *buena pro* sin discusión adicional de las propuestas iniciales o, de lo contrario, la Junta de Subastas de ASG podía solicitarles a los proponentes su mejor y final oferta (BAFO, por sus siglas en inglés) con los proponentes que cumplieron con las disposiciones establecidas en el pliego. Luego de reunir a los licitadores, la Junta de Subastas de ASG realizaría una evaluación final en la cual elegiría a los proponentes que representaran el mejor valor para el Gobierno de Puerto Rico.

Así las cosas, en o antes del 12 de junio de 2024, catorce licitadores presentaron sus propuestas de forma física y electrónica. En esa misma fecha, se celebró el Acto de Apertura y estos fueron los licitadores que presentaron sus propuestas:

- R & F Asphalts Unlimited, Inc.
- **Alondra Contractor Corp.**
- Maglez Engineerings & Contractors Corp.
- Lineas de Puerto Rico, Inc.
- Tekniek Construction
- Tropical Asphalt Solutions Corp.
- A & M Solutions, LLC
- Norvan General Contractor, Inc.
- Puerto Rico Asphalt LLC
- OEG Service & Contractor Corp.
- JR Site Construction Corp.
- Desing Build, LLC
- Professional Asphalt LLC
- Super Asphalt Pavement Corp.

El 13 de junio de 2024, la Junta de Subasta de ASG remitió las catorce propuestas para la evaluación del Especialista del Área de Adquisiciones de ASG. Más tarde, el 10 de diciembre de 2024, la Administración Auxiliar de Adquisiciones de ASG remitió a la Junta de Subastas de ASG las propuestas para su evaluación. En igual fecha, la Junta de Subastas les solicitó a los licitadores que presentaran sus BAFO. Tras recibir las BAFO de los licitadores, la Junta de Subastas de ASG informó que los siguientes licitadores estaban cualificados:

- R & F Asphalts Unlimited, Inc.
- Maglez Engineerings & Contractors Corp.
- Lineas de Puerto Rico, Inc.

- Tekniek Construction
- Tropical Asphalt Solutions Corp.
- A & M Solutions, LLC
- Norvan General Contractor, Inc.
- Puerto Rico Asphalt LLC
- OEG Service & Contractor Corp.
- JR Site Construction Corp.
- Desing Build, LLC
- Super Asphalt Pavement Corp.

Luego de identificar a los licitadores calificados, la Junta de Subastas de ASG citó a los representantes de las compañías calificadas a una reunión a celebrarse el 16 de diciembre de 2024 con el fin de solicitar las BAFO, aclarar disposiciones de las propuestas y/o requerirles información adicional. Tras celebrar la mencionada reunión, la Junta de Subastas informó que los licitadores calificados debían presentar sus BAFO en o antes del 19 de diciembre de 2024. El 3 de enero de 2025, la Administración Auxiliar de Adquisiciones de ASG sometió su recomendación final junto con los expedientes para el correspondiente análisis y determinación final.

Así las cosas, la Junta de Subastas de ASG emitió su *Resolución de Adjudicación* el 24 de enero de 2025.[11] En esta, la Junta de Subastas les adjudicó la *buena pro* a los siguientes licitadores:

- R & F Asphalts Unlimited, Inc.
- Maglez Engineerings & Contractors Corp.
- Lineas de Puerto Rico, Inc.
- Tekniek Construction
- Tropical Asphalt Solutions Corp.
- A & M Solutions, LLC
- Norvan General Contractor, Inc.
- Puerto Rico Asphalt LLC
- OEG Service & Contractor Corp.
- JR Site Construction Corp.
- Desing Build, LLC
- Super Asphalt Pavement Corp.

La Junta de Subastas de ASG detalló que dichos licitadores satisficieron las necesidades y los requisitos establecidos en el RFP-23J-19772. Así mismo, la Junta de Subastas de ASG encontró que estos licitadores cumplieron con las instrucciones generales, los términos, las condiciones, los requerimientos especiales, las

---

[11] Véase apéndice de la recurrente, págs. 32-46.

especificaciones y disposiciones requeridas en el pliego de subasta. De manera que, estos licitadores representaban el mejor valor para el Gobierno de Puerto Rico.

De otro lado, la Junta de Subastas de ASG señaló que los licitadores no agraciados fueron **ACC**, OEG Service & Contractor Corp. y Professional Asphalt LLC. En lo pertinente a la controversia de marras, la Junta de Subastas de ASG explicó que ACC no fue un licitador agraciado ya que no obtuvo la puntuación requerida mínima de 35 puntos en la **primera fase**. A saber, la puntuación obtenida por ACC se distribuye de la siguiente manera:

| Criterios | Puntuación Máxima |
|---|---|
| Desempeño Pasado | 18/25 |
| Capacidad Financiera | 5/10 |
| Capacidad Técnica | 8/35 |
| **TOTAL** | **31** |

La Junta de Subastas de ASG señaló que la propuesta presentada por ACC adolecía de varios defectos que se ven reflejados en la baja puntuación. Entre estos, la Junta de Subastas de ASG resaltó el requisito de seis formularios de desempeño pasado firmados y completados por clientes distintos; tres de trabajos similares a los requeridos en el RFP-23J-19772 y tres de trabajos distintos a los requeridos en el RFP-23J-19772. La Junta de Subastas de ASG señaló que de los formularios antes mencionados, ACC solo presentó tres formularios y dos de ellos fueron completados por el mismo cliente. Por otro lado, la Junta de Subastas de ASG aseveró que ACC tampoco entregó carta de referencia bancaria sobre línea de crédito, plan de trabajo, licencias, certificaciones, permisos o diplomas del personal clave, información detallada sobre la disponibilidad de movilización, carta de capacidad de fianza, certificados educativos del personal que propone utilizar, resumen sobre las actividades que subcontratará, entre otros. Al no obtener una puntuación mínima de 35 puntos en la primera fase, la Junta de Subastas de ASG rechazó la propuesta de ACC.

Inconforme, ACC presentó una *Solicitud de Revisión* ante la Junta Revisora de Subastas de ASG el 3 de febrero de 2025.[12] En esencia, la recurrente alegó haber cumplido con siete de los doce criterios establecidos en la primera fase. Arguyó que los criterios evaluativos establecidos por la Junta de Subastas de ASG no fueron claros y solo privan a los licitadores de conocer las razones por las cuales se les otorga determinada puntuación. Que dicha práctica da paso a la arbitrariedad y disparidad en la evaluación de las propuestas. Por otro lado, ACC aseguró ser una empresa con vasta experiencia que ha trabajado con el Gobierno de Puerto Rico en proyectos millonarios sin tener un solo señalamiento por faltas en la ejecución de su trabajo. La recurrente aseguró, además, haber cumplido con varios de criterios evaluativos, de forma parcial o total. Por todo esto, ACC solicitó que se dejara sin efecto la *Resolución de Adjudicación* el 24 de enero de 2025.

El 31 de marzo de 2025, la Junta Revisora de Subastas de ASG emitió una *Resolución* en la cual confirmó la adjudicación de la junta de Subastas de ASG.[13] Sobre la adjudicación de puntos en los criterios sobre desempeño pasado, capacidad financiera y capacidad técnica, la Junta Revisora de Subastas de ASG explicó que cada criterio principal se desglosó en subcriterios concretos a los cuales se les asignó un valor definido. De manera que, dicha estructura permitió que la evaluación estuviese basada en evidencia documental objetiva y verificable, como la inclusión de formularios, cartas de recomendación, planes de trabajo, entre otros.

Ahora bien, la Junta Revisora de Subastas de ASG indicó que, contrario a la alegación de ACC, esta no cumplió cabalmente con siete de los doce criterios establecidos para ese renglón. Sino que solo cumplió con cinco de los doce criterios. De manera que, la Junta

---

[12] Véase apéndice de la recurrente, págs. 16-31.
[13] Véase apéndice de la recurrente, págs. 1-15.

Revisora de Subastas de ASG no encontró motivo alguno para intervenir con la determinación de la Junta de Subastas de ASG.

Inconforme aun, ACC acudió ante este foro apelativo intermedio mediante el presente recurso de revisión administrativa y nos señala la comisión de un único error:

**ERRÓ Y ABUSÓ DE SU DISCRECIÓN LA HONORABLE JUNTA DE SUBASTAS DE LA ASG AL CALIFICAR LA PROPUESTA PRESENTADA POR LA COMPARECIENTE Y OTORGARLE UNA PUNTUACIÓN GLOBAL DE 31, LO QUE IMPIDIÓ QUE PUEDA PASAR A LA SEGUNDA FASE DE EVALUACIÓN.**

## II.

### A. Revisión judicial

La revisión judicial permite que este Tribunal revise las decisiones, órdenes y resoluciones finales de un foro administrativo. Art. 4.006(c) de la *Ley de la Judicatura*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y; Sec. 4.2 de la *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672 (LPAUG). Su objetivo es asegurar que el foro administrativo actúe dentro del poder delegado y la política legislativa. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Forum, 2013, pág. 669.

Los tribunales sostendremos las determinaciones de hechos de la agencia si se basan en la evidencia sustancial del expediente administrativo. Sec. 4.5 de la LPAUG, *supra*, sec. 9675. No obstante, revisaremos las conclusiones de derecho en todos sus aspectos. *Íd.*; *Vázquez y otro v. Con. Tit. Los Colares*, 2025 TSPR 56. Contrario al pasado en que la revisión judicial se circunscribía a otorgar deferencia a la interpretación administrativa basado en su conocimiento especializado y determinar si la misma fue razonable, los tribunales debemos ejercer un juicio independiente al determinar si un foro administrativo actuó dentro del marco de sus facultades

estatutarias. *Íd.* Ello, sin tener que otorgar deferencia a la interpretación del derecho de la agencia, sino guiados por los mecanismos interpretativos judiciales. *Íd.* Pues, a diferencia de las agencias, los tribunales tenemos mayor oportunidad de "[s]ituar estas controversias en un ámbito más amplio, donde la consideración decisiva tiene que ser el continuado mantenimiento de un vigoroso régimen de derecho en la comunidad, abonado por la indispensable fe pública en los procesos administrativos y judiciales". *Íd., citando a South Porto Rico Sugar Co. v. Junta Azucarera*, 82 DPR 847 (1961).

Por otro lado, las cuestiones mixtas de hechos y de derecho se considerarán como controversias de derecho, por lo que serán revisables en toda su extensión. *Super. Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Rivera v. A&C Development Corp.*, 144 DPR 450 (1997).

### B. Revisión de Subastas

La revisión de subastas es limitada y se rige por principios similares a los que gobiernan la revisión de los procedimientos celebrados ante las agencias. *Maranello v. OAT*, 186 DPR 780, 793 (2012). Como norma general, en el contexto de las subastas gubernamentales, la Junta de Subastas de la agencia goza de amplia discreción en la evaluación de las propuestas sometidas ante su consideración. *Caribbean Communications v. Pol. de PR*, 176 DPR 978, 1006 (2009). Es por esto que, de ordinario, las agencias se encuentran en mejor posición que los tribunales para evaluar las ofertas ante su consideración. *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 408 (2009). Lo anterior responde a la vasta experiencia y especialización que posee la agencia y que, a su vez, la coloca en mejor posición que el foro judicial para seleccionar al mejor licitador. *Maranello v. OAT*, *supra*, pág. 792.

Por lo que, los tribunales reconocemos la discreción de las agencias en el ejercicio de sus facultades para considerar licitaciones, rechazar propuestas y adjudicar la subasta a favor de la oferta que

estime ajustada a las necesidades particulares de la agencia y al interés público en general. *Aut. Carreteras v. CD Builders, Inc., supra.* De manera que, los tribunales no deben intervenir con el criterio de las agencias, excepto en aquellos casos donde se demuestre que la decisión se tomó de forma arbitraria o caprichosa, o mediante fraude o mala fe. *Torres Prods. v. Junta Mun. Aguadilla,* 169 DPR 886, 898 (2007). Ausentes estos elementos, ningún licitador tiene derecho a quejarse cuando otra oferta es elegida como la más ventajosa. *Íd.* El criterio rector de las revisiones administrativas será la razonabilidad de la actuación de la agencia. Los tribunales no deben alterar las determinaciones de un organismo administrativo si están sostenidas por evidencia sustancial que surja del expediente considerado en su totalidad. *Otero v. Toyota,* 163 DPR 716, 727-728 (2005).

Como corolario de lo anterior, los tribunales le debemos deferencia judicial a las decisiones y actuaciones administrativas. Por ello, la revisión judicial se limita a las ordenes o resoluciones finales de las agencias. De esa forma, la Asamblea Legislativa limitó la revisión judicial con la intención de evitar una intromisión indebida y a destiempo en el trámite administrativo por parte de los tribunales. *Comisionado Seguros v. Universal,* 167 DPR 21, 29 (2006). En lo pertinente, la Sección 4.2 de la Ley 38-2017 dispone que una parte adversamente afectada por una orden o resolución final de la Junta Revisora de Subastas de ASG podrá acudir ante esta Curia mediante recurso de revisión en un término de veinte (20) días. 3 LPRA sec. 9672. Añade la Sección 4.2 que, las ordenes o resoluciones interlocutorias emitidas en procesos que se desarrollan por etapas, no serán revisables sino que podrán ser objeto de señalamiento de error en el recurso de revisión.

Nuestro foro supremo ha intimado que una orden o resolución final tiene las características de una sentencia en un procedimiento judicial, debido a que resuelve en definitiva la cuestión litigiosa y

permite su apelación o solicitarse su revisión. *J. Exam. Tec. Méd. v. Elías et al.*, 144 DPR 483, 490 (1997). Por lo que, una orden o resolución final es aquella que culmina el procedimiento administrativo, tiene efectos sustanciales sobre las partes y resuelve todas las controversias ante la agencia; les pone fin, sin dejar pendiente una para ser decidida en el futuro. *Comisionados de Seguros v. Universal, supra.*

### C. Ley de la Administración de Servicios Generales

La *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, Ley 73 de 19 de julio de 2019, según enmendada, Ley Núm. 73-2019, establece como política pública del Gobierno de Puerto Rico la centralización de los procesos de compras gubernamentales de bienes, obras y servicios, con el fin de lograr mayores ahorros fiscales y la transparencia en la gestión gubernamental. Véase, Ley Núm. 73-2019, Exposición de Motivos. En armonía con lo anterior, se delegó en la ASG la responsabilidad de implantar la política pública, dirigir el proceso de adquisición de bienes y servicios y la contratación de servicios del Gobierno de Puerto Rico, entre otros. 3 LPRA sec. 9832e.

Mediante la Ley Núm. 73-2019 se creó a la Junta de Subastas de ASG de naturaleza cuasijudicial, con la facultad de evaluar y adjudicar las subastas del Gobierno de Puerto Rico. 3 LPRA sec. 9836. La Junta de Subastas de ASG está facultada para emitir invitaciones de subastas y solicitudes de propuestas selladas, evaluar y adjudicar las propuestas y/o subastas, no aceptar licitaciones que contengan precios en exceso del precio de venta al detal sugerido por el manufacturero, entre otros. Por otro lado, también se creó la Junta Revisora de Subastas, también adscrita a la ASG y de igual naturaleza cuasijudicial, facultada para revisar cualquier impugnación de las determinaciones o adjudicaciones hechas, entre otras, por la Junta de Subastas. 3 LPRA sec. 9837.

Sobre el procedimiento de revisión administrativa, el Artículo 66 de la citada Ley establece que la Junta Revisora de Subastas de ASG debe considerar la revisión administrativa dentro de los treinta días de su presentación. 3 LPRA sec. 9838c. Dispone además que, si la ASG o la Junta Revisora dejan de tomar alguna acción con relación a la solicitud de revisión dentro del término correspondiente, se tendrá por rechazada de plano y a partir de esa fecha comenzará a correr el término para la revisión judicial. La parte adversamente afectada por la adjudicación de la Junta Revisora de Subastas de ASG, podrá presentar un recurso de revisión ante el Tribunal de Apelaciones conforme a las disposiciones de la Ley Núm. 38-2017. 3 LPRA 9838e.

Por otra parte, la Ley Núm. 73-2019 dispone que la ASG deberá cumplir con una serie de criterios para la evaluación o adjudicación en los procesos de subastas, requerimientos de propuestas o requerimientos de cualificaciones. En lo pertinente, el Artículo 33 inciso (e) dispone que:

> Cuando el incumplimiento con especificaciones, condiciones o términos del proceso se exponga como fundamento para descalificar o rechazar la oferta, se deberá exponer claramente el fundamento de tal determinación en el aviso de adjudicación, junto con el análisis técnico que se llevó a cabo y la totalidad de los documentos que sustentan el mismo. 3 LPRA sec. 9834i.

Por otro lado, y en cumplimiento con lo dispuesto en el Artículo 25, se aprobó el Reglamento uniforme de compras y subastas de bienes, obras y servicios no profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico, Reglamento Núm. 9230, 18 de noviembre de 2020 (Reglamento Núm. 9230). En el mismo, se disponen las normas y procedimientos a seguir para la adquisición de bienes, obras y servicios no profesionales en el Gobierno. 3 LPRA 9834a.

**D. Reglamento uniforme de compras y subastas**

El Reglamento Núm. 9230 dispone que la Junta de Subastas deberá evaluar las ofertas tomando en consideración los criterios establecidos en el pliego de la subasta formal en conjunto con los criterios enumerados en el Reglamento. En lo pertinente, la Sección 7.2.17.2. dispone que la Junta de Subastas debe considerar los criterios establecidos en el pliego de subasta, junto con los siguientes:

   a. [...]
   b. [...]
   c. [...]
   d. La habilidad reconocida del licitador para llevar a cabo trabajos de la naturaleza bajo consideración en obras y servicios no profesionales.
   e. [...]
   f. [...]
   g. La capacidad económica y financiera, así como la trayectoria y experiencia previa del licitador para proveer estos servicios o bienes y cumplir con los términos de entrega y garantías del producto o servicio.
   h. [...]
   i. [...]
   j. [...]

**III.**

En el presente caso, ACC nos plantea que la Junta de Subastas de ASG erró y abusó de su discreción en el proceso de calificación de las propuestas ya que le otorgó a la recurrente una puntuación global de 31 puntos, impidiéndolo avanzar a la segunda fase de evaluación. Recordemos que el proceso evaluativo para el RFP-23-J-19772 se componía de tres fases.

En la **primera fase**, la Junta de Subastas de ASG evaluó preliminarmente las propuestas para verificar su cumplimiento con los términos y condiciones insubsanables establecidos en el pliego de subasta. La Junta de Subastas de ASG podía rechazar de plano la propuesta sin ulteriores procedimientos si el licitador incumplía con uno o más de los criterios dispuestos en el Anejo VI del pliego de subasta. A saber: desempeño pasado, capacidad financiera, capacidad técnica y precio. Aquellas propuestas que cumplieron con todos los criterios continuarían en el proceso de evaluación. Fue en

esta fase que la Junta de Subastas de ASG rechazó tres propuestas. Entre estas, rechazó la propuesta de ACC.

En su *Resolución de Adjudicación*, la Junta de Subastas de ASG explicó que la propuesta de ACC no cumplió con varios de los criterios establecidos en el pliego de subastas. Señaló que para el criterio de desempeño pasado, ACC debía presentar seis formularios sobre desempeño pasado. Los mismos debían ser completados y firmados por clientes distintos. Tres de estos formularios debían ser completados y firmados por clientes distintos a los que ACC les hubiese provisto bienes, obras o servicios con una **naturaleza similar** o igual a las solicitadas en el pliego de subasta. Los otros tres formularios debían ser completados y firmados por clientes distintos a los que ACC les hubiese provisto bienes, obras o servicios con una **naturaleza distinta** o igual a las solicitadas en el pliego de subasta. Surge del expediente que la recurrente presentó tres formularios y que dos de estos fueron completados por el mismo cliente, el Municipio de Juncos. Aunque dos personas distintas firmaron los formularios, ambas lo hicieron en representación del Municipio de Juncos. Aun cuando la recurrente cumplió con otros aspectos sobre el criterio de desempeño pasado, incumplió con el requisito de los formularios. Por ello, ACC solo obtuvo 18 de 25 puntos.

Por otro lado, la Junta de Subastas de ASG encontró que ACC incumplió con el criterio de capacidad financiera ya que no presentó una carta de referencia bancaria sobre línea de crédito ni una carta de capacidad de fianza. Por ello, obtuvo 5 de 10 puntos. Finalmente, la Junta de Subastas encontró que ACC incumplió con varios requisitos pertinentes al criterio de capacidad técnica. La recurrente no presento un plan de trabajo; licencias, certificaciones, permisos o diplomas del personal clave; información detallada sobre la disponibilidad de movilización en caso de un evento atmosférico; certificados educativos del personal que proponía utilizar, ni un

resumen sobre las actividades que subcontrataría. En base a esto, la Junta de Subastas le otorgó 8 de 35 puntos.

Luego de estudiar cuidadosamente el expediente ante nuestra consideración, encontramos que la Junta de Subastas de ASG no erró en su proceder. Ciertamente, la propuesta presentada por ACC no cumplió con los criterios establecidos claramente en el pliego de subasta. Además, el pliego fue claro en cuanto a la descalificación durante la primera fase de aquellos proponentes que no cumplieran con los criterios del pliego de subasta. Ante este cuadro, aplicando el esquema de revisión aplicable, somos del criterio que determinación de la Junta de Revisión de Subastas de la ASG es una razonable -por no decir que la única posible-con base en el expediente de la licitación ante sí.  Ante ello, procede que confirmemos la misma.

**IV.**

Por las razones que anteceden, confirmamos la *Resolución* recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones